### UNITED STATES v. MASAAKI KUWABARA.
#### No. 8966–G.

District Court, N. D. California, N. D.
July 22, 1944.

Emmett J. Seawell, Asst. U. S. Atty., of Sacramento, Cal., for plaintiff.

Arthur Hill, Jr., and Blaine McGowan, both of Eureka, Cal., for defendant, by appointment by the Court.

GOODMAN, District Judge.

The United States Grand Jury for the Northern Division of the Northern District of California on July 13, 1944, presented an indictment charging the defendant with violation of 50 U.S.C.A.Appendix, § 311 (Selective Training and Service Act of 1940 as amended) in that defendant did on or about May 3, 1944, "fail, neglect and refuse to report for pre-induction physical examination as ordered by Local Selective Service Board No. 4," a local board having jurisdiction within the County of Modoc, State of California.

At the time of presentment of the indictment, defendant was in the custody of the Director of the War Relocation Authority in an area or camp known as Tulelake Segregation Center, in Modoc County, State of California. Upon filing of the indictment, a warrant issued and, upon service of the warrant, the director in charge of the Tulelake Segregation Center delivered custody of the defendant to the Marshal who produced him for arraignment before this court at the Eureka term.

After arraignment, time to plead was allowed and defendant filed a motion to quash the indictment and to dismiss the proceeding. The grounds of the motion are:

1. That at the time of the commission of the offense and at the time of the presentment of the indictment, defendant was and is deprived of his liberty without due process of law.

2. That at all times during this proceeding and at the time of arraignment and plea, defendant was and is deprived of his liberty without due process of law and by reason thereof, defendant's plea is not and cannot be voluntary because of defendant's restraint and fear due to confinement in the Tulelake Segregation Center.

3. That the action of the Selective Service Board in ordering defendant to report for a preinduction physical examination was improper and unlawful for the reason that defendant had not theretofore been accepted for service by the United States Army as required by the regulations promulgated by the Director of Selective Service pursuant to the authority of the Act. Local Board Memorandum No. 179 as amended Jan. 14, 1944.

4. That defendant was not lawfully subject to registration under the Act as provided in Sec. 611.4 of the Regulations.

5. That defendant was legally entitled to be classified in Class 4–C and not in 1–A under said Regulations.

6. That defendant was not lawfully acceptable for service under the Act because defendant had lawfully and duly applied for expatriation to Japan prior to the attempted classification by the local board.

Defendant also demurred to the indictment alleging:

1. Failure to state facts sufficient to constitute a public offense.

2. Failure to allege that defendant was determined as acceptable by the United States Army for service therein prior to the local board's order to report for pre-induction physical examination.

From the evidence offered in support of the motion to quash and dismiss and from stipulations made at the hearing thereon, the following appear to be uncontroverted facts:

The War Relocation Authority was established in the Office for Emergency Management of the Executive Office of the President on March 18, 1942, by Executive Order No. 9102. This order further authorized the Director of the War Relocation Authority (said office being created by the President in said order) to formulate and effectuate a program for the removal, relocation, maintenance and supervision of persons designated under Executive Order No. 9066, Feb. 19, 1942, 7 Federal Register 1407, to be removed, relocated, maintained and supervised.

In the spring and summer of 1942, following the attack on Pearl Harbor, the Japanese and Nisei were evacuated from their homes on the West Coast and committed to temporary assembly centers located in the general area of their residences. Tulelake Segregation Center, located at Camp Newell, Modoc County, in Northern California, was originally constructed and used for a time as a permanent relocation center to which Japanese and Japanese-Americans were sent from the temporary assembly centers to await resettlement in the interior of the United States. Some time in 1943, however, the Relocation Authority decided to segregate loyal and disloyal internees. Tulelake Center was chosen as a concentration center for those whose disloyalty was determined either by the government or by their own declarations or because of their expressed desire to be repatriated to Japan.

Defendant, a native-born American citizen of Japanese ancestry, was a resident of the State of California at the time of the attack on Pearl Harbor and the declaration of war against Japan. 55 Stat. 795, Ch. 561, 50 U.S.C.A.Appendix, preceding Section 1.

In the spring of 1942, the defendant was, pursuant to the President's order, evacuated from his residence at San Pedro, California, to an assembly center located at Santa Anita, California. Later he was removed to a so-called relocation center at Jerome, Arkansas. At a time not specified, but substantially prior to the date of the acts alleged in the indictment, he was removed as a disloyal Nisei to the Tulelake Center and continuously thereafter has been forcibly detained therein. It is not controverted that defendant admits disloyalty, claiming that discrimination against him as an American citizen and his consequent detention at Tulelake, motivated him to such state of mind. It is not questioned that Tulelake Center is an area surrounded by barricades and patroled by armed guards and that immediately without the barricades, military forces of the United States are present and available to assure against departure of any of the persons confined in the Center.

At some time prior to May 3, 1944, Local Selective Service Board No. 4, a local board functioning under the Selective Service system, while defendant was confined within the Center, classified the defendant in 1-A classification, i. e. the class of registrants available for military service (Sec. 622.11 of the Regulations) and thereafter, and while defendant was still confined as aforesaid, the local board ordered defendant to report for preinduction physical examination on May 3, 1944 (Sec. 629.2 of the Regulations). While such physical examination is not technically a part of the swearing-in ceremony constituting induction itself, it is, in effect, a part of the procedure of induction. Since the registrant had been already found and determined to be available for military service, he was subject to immediate induction if physically fit. Defendant failed to obey the order to report for *preinduction* physical examination on the date fixed and the indictment followed.

That the Local Board wrongly classified the defendant, or that the defendant should have been otherwise classified, as urged in support of the motion, is not properly of judicial concern here. Such matters can only be judicially examined after induction, in habeas corpus proceedings. Falbo v. United States, 320 U.S. 549, 64 S.Ct. 346; Crutchfield v. United States, 9 Cir., 142 F.2d 170; Gutman v. United States, 9 Cir., 142 F.2d 555; Kiyoshi Hirabayashi v. United States, 320 U.S. 81, 63 S.Ct. 1375, 87 L.Ed. 1774.

The claim that defendant's attempt at expatriation supports the motion, is without merit. Expatriation is not available to defendant so long as he is a resident of the United States. 8 U.S.C.A. § 803.

We come now to the question: Is defendant deprived of his liberty without due process of law in this proceeding by virtue of the circumstances of his confinement at Tulelake?

While the validity and constitutionality of the Presidential order for the relocation and confinement of American citizens of Japanese ancestry is challenged by the motion, the resolution of that question is neither necessary nor proper for the determination of the motion. Defendant was at all the times with which we are concerned, in actual confinement pursuant to the President's Order. Whether such confinement is lawful or not, is beside the question.

Certain dangers vitally imminent to the security of the West Coast motivated the President, as Commander-in-Chief of the armed forces, in promulgating the order

referred to. The war powers vested in the executive may be sufficient constitutional justification therefor, just as they were so held to be in the case of curfew restrictions against Japanese-American citizens. See Kiyoshi Hirabayashi v. United States, 320 U.S. 81, 63 S.Ct. 1375, 87 L.Ed. 1774.

No such dangers, however, are the basis for the prosecution of defendant for refusing to be inducted, or for refusing to undergo preinduction physical examination.

■ It does not follow that because the war power may allow the detention of defendant at Tulelake, the guaranties of the Bill of Rights and other Constitutional provisions are abrogated by the existence of war. Kiyoshi Hirabayashi v. United States, supra, concurring opinion of Mr. Justice Murphy. The defendant cannot be denied the protection of the guaranty of due process because of the war or danger to national security but only upon a valid declaration of martial law. Ex parte Milligan, 4 Wall 2, 18 L.Ed. 281. It is shocking to the conscience that an American citizen be confined on the ground of disloyalty, and then, while so under duress and restraint, be compelled to serve in the armed forces, or be prosecuted for not yielding to such compulsion.

■ The Selective Training and Service Act does not provide for forcible induction upon failure to obey the directions of the Statute. In the Declaration of Policy, set out in Sec. 301, 50 U.S.C.A.Appendix, the Selective Training and Service Act, Congress declared:

"The Congress further declares, that in a *free society* the obligations and privileges of military training and service should be shared generally in accordance with a *fair and just* system of selective compulsory military training and service." (Emphasis supplied.)

■ Certainly "fair and just" compulsory military training in a "free society" is wholly inconsistent with the instant proceeding. The "due process" guaranteed by the Fifth Amendment means that "there can be no proceeding against life, liberty, or property which may result in the deprivation of either, without the observance of those general rules established in our system of jurisprudence for the security of private rights." Hagar v. Reclamation District, 111 U.S. 701, 4 S.Ct. 663, 667, 28 L.Ed. 569. "If any of these (general rules) are disregarded in the proceedings by which a person is condemned to the loss of life, liberty, or property, then the deprivation has not been by 'due process of law.'" Hurtado v. California, 110 U.S. 516, 4 S.Ct. 111, 121, 292, 28 L.Ed. 232. "The public interest that a result be reached which promotes a well-ordered society is foremost in every criminal proceeding. That interest is entrusted to our consideration and protection as well as that of the enforcing officers." Young v. United States, 315 U.S. 257, 258, 260, 62 S.Ct. 510, 511, 86 L.Ed. 832.

■ The government urges that the question of "due process" is not reachable at this time, but only by writ of habeas corpus after compliance with the order of the local board. However, it is clear to me that defendant is under the circumstances not a free agent, nor is any plea that he may make, free or voluntary, and hence he is not accorded "due process" in this proceeding.

The issue raised by this motion is without precedent. It must be resolved in the light of the traditional and historic Anglo-American approach to the time-honored doctrine of "due process." It must not give way to overzealousness in an attempt to reach, via the criminal process, those whom we may regard as undesirable citizens.

The motion to quash the indictment is granted and the proceeding is dismissed.

In view of the court's decision on the motion, it is not necessary to determine the issue of law presented by the demurrer.

The defendant is remanded to the custody of the Marshal to be by him returned to the custody of the Director of the War Relocation Authority at the place where custody of the defendant was given to the Marshal.

---

Upon the authority of the foregoing opinion and decision, the Court made the same order in the case of twenty-five other defendants similarly charged.