**DOWLING BROS. DISTILLING CO. et al.**
**v. UNITED STATES.**
Nos. 10009, 10010.

Circuit Court of Appeals, Sixth Circuit.
Feb. 8, 1946.

354

Sawyer A. Smith, of Covington, Ky. (Howell W. Vincent, of Covington, Ky., on the brief), for appellants.

Claude P. Stephens, of Lexington, Ky. (Doris W. Meenehan and Abraham Glas-

ser, both of Washington, D. C., on the brief), for appellee.

Before HICKS, SIMONS, and ALLEN, Circuit Judges.

SIMONS, Circuit Judge.

Out of a criminal prosecution of the corporate and the individual defendant for violations of maximum price regulations under the Emergency Price Control Act of 1942, 50 U.S.C.A.Appendix, § 901 et seq., in the sale of whiskey in Kentucky, grew the two appeals. No. 10,009 is from an order of the District Court, prior to trial, denying a stay of proceedings and the right of the appellants to file suit in the Emergency Court of Appeals to test the validity of the regulations under which they were indicted. No. 10,010 is an appeal from the judgment and sentences imposed after trial to and conviction by a jury. ·

■ The first question to be considered is whether the order in No. 10,009 is appealable. Section 204(e) (1) of the Emergency Price Control Act, 50 U.S.C.A.Appendix, § 924(e) (1), provides that a defendant charged with violations may, within 30 days after arraignment and within 5 days after judgment, apply to the court in which the proceeding is pending, for leave to file in the Emergency Court of Appeals a complaint setting forth objections to the validity of any provision which he is alleged to have violated, and that the court shall grant such leave if it finds that the objection is made in good faith and that there is a reasonable and substantial excuse for failure to present it in a protest filed with the Administrator in accordance with § 203(a). Except as provided in section 129 of the Judicial Code, 28 U.S.C.A. § 227, permitting appeals from interlocutory decrees or orders granting or denying an injunction, Circuit Courts of Appeals are limited in their appellate jurisdiction, to final decisions of District Courts, 28 U.S.C.A. § 225. A judgment is final, for the purpose of appeal, only when it terminates the litigation on the merits and leaves nothing to be done but to enforce by execution what has been determined. Berman v. United States, 302 U.S. 211, 58 S.Ct. 164, 82 L.Ed. 204; Heike v. United States, 217 U.S. 423, 30 S.Ct. 539, 54 L.Ed. 821. The tests which bear upon the finality of decisions are carefully considered in Cobbledick v. United States, 309 U.S. 323, 60 S.Ct. 540, 541, 84 L.Ed.

783, where the reasons for denying separate reviews of the component elements in a unified cause are fully elucidated, leading to the conclusion that a party will not be allowed to take to the upper court a ruling where the result of review will affect the orderly progress of a cause, and wherein it was said, "the correctness of a trial court's rejection even of a constitutional claim made by the accused in the process of prosecution must await his conviction before its reconsideration by an appellate tribunal. Cozen v. United States, 278 U.S. 221, 49 S.Ct. 118, 73 L.Ed. 275." It must be concluded, therefore, that the challenged order was not reviewable prior to the trial upon the merits, unless denial of a stay of a criminal proceeding in the court where it is pending, is an order denying an injunction and so appealable under section 227.

■ Its characterization as an injunction is rested on Enelow v. New York Life Ins. Co., 293 U.S. 379, 55 S.Ct. 310, 79 L.Ed. 440, wherein it was held that a refusal by a court of equity to stay proceedings at law, is a grant or refusal of an injunction appealable under section 227. As pointed out, however, in United States v. Horns, 3 Cir., 147 F.2d 57, the Supreme Court made it clear in the Enelow case, that if a court of law itself grants a stay of proceedings before it, the stay is not an injunction but merely an exercise of the court's inherent power to control the progress of a cause before it, so as to maintain the orderly processes of justice. It is only when the power possessed by a court of equity is exercised to stay proceedings in another cause that such action amounts to the grant or refusal of an injunction, and this distinction was stressed in Cover v. Schwartz, 2 Cir., 112 F.2d 566. Compare Triangle Conduit & Cable Co. v. National Electric Products Corp., 6 Cir., 127 F.2d 524. With this view we are in accord. It follows that the appeal in No. 10,009 must be dismissed. The dismissal, however, in no wise affects the right of the appellants to assail the order of denial in their appeal from conviction and sentence. It is there fully pressed and will presently be considered.

The District Court denied the petition of the appellants for a stay of proceedings and for leave to file their complaint in the Emergency Court of Appeals, on the ground that it was not made in good faith, and also on the ground, implicit, if

not fully expressed in its findings, that their excuses for failure to present their objections in a protest to the Administrator in accordance with section 203(a) were neither reasonable nor substantial. For the purpose of determining the validity of the court's order, and whether it was made in the exercise of a sound judicial discretion, it becomes necessary to consider the chronology of events leading to trial and conviction, and to analyze and assay the reasons presented by the appellants for their failure to pursue the statutory remedies provided by the Act.

■ Before doing so, however, consideration must be given to the connotation of the terms "good faith" and "reasonable and substantial excuse," as they are used in section 204(e) (1). This section was added in the June 30, 1944, renewal of the Act to aid persons who sincerely sought to pursue the exclusive statutory remedies but who might lack the opportunity to do so before being convicted and punished for violation. Prior to that time violations could be punished without regard to ultimate adjudications of invalidity in respect to the regulations. This was deemed necessary to prevent premature disruptions of war-time price controls. Section 204(e) (1) made possible the testing of the validity of a price regulation after indictment and before trial. It is clear, however, that in setting up this procedure Congress did not intend to permit its use in every case as a matter of right. It therefore required a showing of good faith and a reasonable and substantial excuse for failure to protest, and it is clear that, by the language used, the District Courts are charged with the exercise of great care in permitting an indicted defendant to stay the progress of a criminal trial. The terms used and the legislative history both so indicate. Senator Wagner, Manager of the Senate Conference on the Renewal Act, said, in presenting the Conference Report to the Senate: "The procedure provided in the amendment does not represent a regular method to be followed in enforcement cases. Rather, it is an exceptional procedure which has been made available to avoid the risk of injustice that existed under the original act. * * * The remedial procedure prescribed * * * is available only to defendants whose objections the courts find have been made in good faith, and not primarily for the purpose of delay. The committee is confident that the courts will be vigilant in administering the standards of good faith. * * *" Cong.Rec. Senate 78th Cong. 2d Sess. June 21, 1944, page 6451. In an opinion in United States v. Aronin, 57 F.Supp. 186, 192, announced by District Judge Leamy in the District Court for the Southern District of New York in September, 1944, it was said, quite persuasively, we think: "It is apparent * * * that everything points to a strict and rigidly limited use of the new stay' procedure. Enforcement actions under the Price Control Act should not be subjected * * * to the constant hazard of an automatic stay upon mere application by a defendant. A stay application * * * must have more to recommend it than the natural desire of every wrongdoer to postpone legal reckoning. * * *"

■ The Emergency Price Control Act of 1942, 50 App.U.S.C.A. § 901 et seq., as amended by the Stabilization Extension Act of 1944, provides, in section 203(a), that at any time after the issue of any regulation or order, or at any time after the effective date of a price schedule, any person subject to the provision of such regulation, order or schedule, may file a protest with the Administrator, specifically setting forth his objections to its provisions. The regulations for the violation of which the appellants stand convicted are Maximum Price Regulation 193 issued August 1, 1942, and Maximum Price Regulation 445 issued August 9, 1943. Appellants were indicted January 8, 1945. It does not appear, and is not claimed, that during the 60-day period provided by the regulations for a protest to be lodged with the Administrator, the appellants made any protest or invoked the provision allowing protest after the original 60-day period, although it is clear from the record that the corporate appellant is a substantial industry in Kentucky, and Gould a broker of many years' experience with a large business. They seek to convey the impression that they had no knowledge of the regulations or of the price schedules fixed by the Administrator. They deny that Gould attended a meeting in Baltimore between the distilled spirits industry and representatives of the Office of Price Administration, that Gould or other distillers were there asked to make suggestions and recommendations regarding Maximum Price Regulation 193, or that they were apprised at that meeting of the

proposed regulation or of its adoption by publication in the Federal Register, all as charged by the government in response to their petition. To deny that in a time when all business was being strait-jacketed in respect to prices, and when the public press and business associations of every kind were deeply concerned with the Administration's "hold-the-line" policy, the defendants lacked awareness of important consultations and decisions vitally affecting their own activities, taxes credulity. We are unable to say that the court, in the exercise of a sound judicial discretion, was compelled to accept this seemingly incredible denial of all knowledge, as having been made in good faith or as constituting a reasonable and substantial excuse for their failure to file the protest permissible under section 203(a), and no evidence is supplied by the record in support of the denial other than the self-serving allegations of the petition.

■ The excuse that if a protest were filed with the Administrator it would be a useless and futile step because the Administrator had himself promulgated the regulations and is relying upon their validity not only to maintain the criminal action but to recover claims in suits pending or to be instituted to recover treble damages for violations, should, of course, have been rejected, as it was. As the Court said in Yakus v. United States, 321 U.S. 414, 434, 64 S.Ct. 660, 672, 88 L.Ed. 834, where the constitutionality of the Act was upheld, "in passing upon the sufficiency of the procedure on protest to the Administrator and complaint to the Emergency Court, it is irrelevant to suggest that the Administrator or the Court has in the past or may in the future deny due process. Action taken by them is reviewable in this Court and if contrary to due process will be corrected here. * * * In the absence of any proceeding before the Administrator we cannot assume that he would fail in the performance of any duty imposed on him by the Constitution and laws of the United States."

■ Nor are we able to say that the court should have accepted as a reasonable and substantial excuse and as evidence of good faith, the allegations of the petition that the appellants had complied with the price regulations for a period of 60 days and had no knowledge and could not anticipate that they would be charged with unlawful and wilful violations there-

under after such period. Even if true, a limited period of compliance furnishes no immunity for subsequent violations, and the confidence of violators in the ingenuity by which they hope to escape criminal penalties is not infrequently misplaced.

■ Likewise unimpressive as bearing on good faith or reasonable and substantial excuse for failing to protest is the allegation that distilled spirits are processed from agricultural commodities and therefore no maximum prices therefor may be established without the prior approval of the Secretary of Agriculture, as required by the provisions of section 3(a), (e) and (f) of the Emergency Price Control Act of 1942. These provisions refer to agricultural commodities and not to commodities processed from the products of the farm. Whiskey is not an agricultural commodity, unless we are to determine that occasionally illicit distillations give statutory character to legally produced spirits. To say that a commodity in the manufacture of which agricultural products are used is itself an agricultural commodity, would require the approval of the Secretary of Agriculture to a vast range of commodities coming under the price fixing authority of the Administrator, clearly beyond the Secretary's competency as a specialist to regulate. The Act does not require it and specifically distinguishes in its provisions between agricultural commodities and commodities processed and manufactured in substantial part from grain. Compare section 3(c) of the Emergency Price Control Act, and see Taub v. Bowles, Em.App., 149 F.2d 817, 823.

■ The principal ground, however, upon which the appellants base their petition for leave to complain in the Emergency Court of Appeals, is that the Emergency Price Control Act is unconstitutional, in view of the Twenty-first Amendment, to the extent that it authorizes the fixing of maximum prices on intoxicating liquors in the State of Kentucky, since that state has invaded the field and completely controls the manufacture and sale of such liquors. This contention was, inter alia, the basis of a demurrer to the indictment, which the court overruled. It does not, however, provide reasonable and substantial excuse for failure to protest the regulations, and does not support a stay of the criminal proceeding. The

constitutional validity of the Price Control Act, in the respect indicated, was open to challenge at the trial. It was there vigorously assailed, and the assault with equal vigor is carried into the appeal. The appellants had no need of a stay or for an opportunity to complain to the Emergency Court of Appeals to contest the constitutionality of the Act as it applies to the sale of liquors in Kentucky. Nor was there any deprivation of due process. The court, both upon the demurrer and at the trial, gave full consideration, as indeed it must, to the constitutional question, and it is fully considered here.

We come, therefore, to this conclusion: Giving due consideration to the legislative purpose in enacting section 204(e) (1), to the mandate therein, that the court must find an application for stay to be made in good faith, and must find that a reasonable and substantial excuse prevented protest to the regulations with the Administrator, and upon full consideration of the contentions advanced bearing upon both, we are unable to say that the District Court was wrong in its denial of the stay, its denial of the right to complain in the Emergency Court of Appeals and in proceeding with the orderly process of the criminal trial. The record is barren of any effort whatsoever to set aside or modify the price schedule. The District Court had warrant in the record for the conclusion that the petition was made for purposes of delay.

Turning, then, to the criminal proceeding, our first concern is with the constitutional question raised on demurrer, motion to quash and for directed verdict. The position of the appellants is that by virtue of the Twenty-first Amendment the Congress may not authorize and the Price Administrator may not enforce price regulations with respect to intoxicating liquors in those states which have adopted a plan of liquor control and enacted legislation governing the manufacture, sale and distribution thereof within their borders. Kentucky, they say, has completely occupied the field through its State Alcoholic Beverage Administration and Control Act, Title XX, Ky. Revised Stat. § 240.010 to 244.990 inclusive. The statute contains fair trade provisions which have been declared constitutional by the Court of Appeals of Kentucky in Reeves et al. v. Simons, 289 Ky. 793, 160 S.W.2d 149. There the court declared that the statute rigidly controls the sale of liquor and wine "from the distiller to the wholesaler and from the wholesaler to the retailer," through regulatory provisions which have been held to be within the police power of the state in Ziffrin, Inc. v. Reeves, 308 U.S. 132, 60 S.Ct. 163, 84 L.Ed. 128, a power that extends to the right to fix minimum prices on the sale of commodities.

 The argument that, since the enactment of the Twenty-First Amendment the federal government may not control prices at which liquors are sold in states which have their own regulatory statutes, while more extensively presented and with a greater wealth of citation, is precisely the same as that which we considered in Jatros v. Bowles, 6 Cir., 143 F.2d 453, and there rejected upon reasoning later fully endorsed and applied in Taub v. Bowles, supra. No useful purpose will be served by repeating what was there said. We may add, however, that the Price Control Act does not control the manufacture or sale of liquors in Kentucky. Neither in purpose nor effect is it a prohibitory or regulatory measure, nor does it in any wise sanction the transportation or importation of intoxicating liquors into Kentucky, in violation of its laws. In authorizing the fixing of maximum prices for liquor in furtherance of a national purpose declared to be "in the interest of the national defense and security and necessary to the effective prosecution of the present war," and "to assure that defense appropriations are not dissipated by excessive prices," and "to prevent a post emergency collapse of values," 50 U.S.C.A.Appendix, § 901, it does not invade the state's police power, which, as exercised in the fair trade practices of its Control Act, concerns itself with minimum rather than maximum prices. Even if that were a decisive factor, Kentucky has not undertaken to fix maximum prices on liquor.

 The observation of the former Chief Justice in Home Building & Loan Ass'n v. Blaisdell, 290 U.S. 398, 54 S.Ct. 231, 235, 78 L.Ed. 413, 88 A.L.R. 1481, is still potent in its irrefutable logic: "Thus, the war power of the federal government is not created by the emergency of war, but it is a power given to meet that emergency. It is a power to wage war successfully, and thus it permits the harnessing of the entire energies of the people

in a supreme co-operative effort to preserve the nation." It is only necessary to add that if the State of Kentucky had, as contended, been invested by the Twenty-First Amendment with limitless power over the manufacture, transportation and sale of liquors, it would have been legally impermissible for the government, in prosecuting the war, to have compelled the numerous distilleries within its borders to convert their operations from the manufacture of distilled spirits for consumption, to the manufacture of alcohol so vital to the making of munitions.[1] The effect upon the war effort would doubtless have been grievous, if not indeed catastrophic. The nondiscriminatory fixing of maximum prices for distilled spirits is not, as it affects Kentucky, a grant of or an exercise of unconstitutional federal authority.

 The appellants, by demurrer, motions for directed verdict and other expedients, attacked the 48 counts of the indictment upon which they were convicted, on the ground that they did not contain facts sufficient to inform them of the nature of the charges, allege establishment of the price schedule relied upon, inform them of the regulations, nor allege that the Administrator certified the facts to the Attorney General for indictment or other appropriate proceedings. But each count alleged the court's jurisdiction, the specific number of cases of whiskey sold, the amount in excess of ceiling price paid for them, the maximum price for which whiskey could be sold under regulations promulgated pursuant to the Emergency Price Control Act, the agreement between buyer and seller to sell in excess of such maximum, the delivery of the whiskey, the payment to Gould of more than the ceiling price with the precise amount of each payment, knowledge on the part of the defendants that the sale was for more than the ceiling, and that violations were wilful. The test of an indictment is whether it sufficiently charges the defendant with an offense so that he can know with what he is charged, and whether it is sufficiently specific so that conviction will bar a second prosecution for the same offense. The doctrine is too well understood to require citation. We see no merit in the assault upon any or all of the counts. The long record and the extended briefs indicate

no doubt on the part of the defendants as to the nature of the charges against them.

 The evidence consisted principally of the testimony of Alex Josselson covering sales to him at prices in excess of the maximum provided in the applicable price schedule in support of the charges laid in counts 1 to 21 of the indictment, and of E. J. Baumer, doing business as B & B Liquor Wholesalers, in support of charges laid in counts 22 to 48 of the indictment. Each purchaser testified that he paid the invoice price, which was within the schedule, to the corporation, and later, upon each purchase, made a cash payment to Gould. The amount of the overcharges paid by Josselson was approximately $280,000, and those paid by B & B Liquor Wholesalers, approximately $240,000. Gould was the principal stockholder of the Distilling Company, owning 60,000 of its 114,000 outstanding shares. He and his brother owned all but 20 of such shares. The whiskey was ordered from Gould and delivered by the distillery, in accordance with an agreement that the purchasers were to pay invoice prices to the corporation and a premium to Gould in excess of the OPA ceiling. "It was strictly an 'over' proposition." There was, therefore, ample evidence to sustain the indictment and the verdict of guilty returned by the jury.

 Complaint is made, however, that Baumer, to refresh his memory relative to transactions between June 20 and December 31, 1943, used a memorandum first made on October 28, 1944. This evidence was objected to on the ground that it was not contemporaneous with the occurrences to which the witness testified. Reliance is placed on Putnam v. United States, 162 U.S. 687, 16 S.Ct. 923, 40 L. Ed. 1118, and the admission of the evidence is asserted as error requiring a new trial. But the Putnam case does not establish an inflexible limitation beyond which a memorandum may not be said to be substantially contemporaneous. United States v. Socony-Vacuum Oil Co., 310 U.S. 150, 60 S.Ct. 811, 84 L.Ed. 1129; Fanelli v. United States Gypsum Co., 2 Cir., 141 F.2d 216; Hoffman v. United States, 9 Cir., 87 F.2d 410, 411; Wigmore on Evidence, 2d Ed., § 761. An examination of these authorities indicates that much de-

---

[1] General Preference Order M-69, 7 Federal Register 224 and Supplementary Order 3 to General Preference Order M-69, 7 Federal Register 1128 are illustrative.

pends upon the nature of the memorandum, the circumstances under which it was made, and the matter it contains, and much is left to discretion of the trial judge. Here the essential facts testified to by Baumer, namely, the price per case over ceiling for specific brands of liquor, and the payments thereof to Gould, were given without extrinsic aid. The memorandum was employed for the purpose of giving the computations previously made of the excess payment on each of 21 purchases of liquor. It saved a lengthy arithmetical computation in the courtroom, and we find no error in permitting the witness to avail himself of the memorandum.

Another grievance relates to the admission, by way of rebuttal, of testimony received from witnesses, Rothman, Gustin and Friedman, as to overpayments made by each of them to Gould under circumstances similar to those charged in the indictment. This evidence is sharply attacked as incompetent because it tended to show crimes other than those charged in the indictment, and also attacked as not proper evidence in rebuttal. It appears, however, that Gould, while a witness in his own defense, had testified on cross-examination that he never sold any whiskey over the ceiling. It was proper rebuttal going to the credibility of Gould, whatever infirmity, if any, might have attached to it in other circumstances. It is well established that evidence otherwise admissible does not become inadmissible merely because it tends to show other offenses not charged, and its reception is within the sound discretion of the Court. Walker v. United States, 4 Cir., 104 F.2d 465, 470; Weiner v. United States, 3 Cir., 20 F.2d 522, 523; Williams v. United States, 5 Cir., 46 F.2d 731, 732; Edwards v. United States, 8 Cir., 18 F.2d 402, 403; United States v. Waldon, 7 Cir., 114 F.2d 982; United States v. Skidmore, 7 Cir., 123 F.2d 604; United States v. Rubenstein, 2 Cir., 151 F.2d 915.

The final grievance of the appellants is that the court erred in overruling a motion for directed verdict of not guilty as to the Distilling Company, on the ground that the evidence failed to support the verdict as to it. But Gould and his brother were in absolute control of the distillery. They owned all but 20 of its shares. Upon orders to Gould the whiskey was sent by the corporation directly to the wholesalers, who testified that it had been sent to them in accordance with an agreement that they were to pay invoice prices to the distillery and premiums to Gould. There was evidence that Gould, though not an officer, controlled all the major activities of the corporation, including its sales; that except to a few old customers no whiskey was sold save on orders from Gould; and that Gould was in charge of its Cincinnati office. It was within the competence of the jury to view the corporation as equally responsible with Gould for the violations. We find no error in the submission to the jury of the case against the distillery, and are unable to say that the evidence fails to sustain its verdict.

The appeal in No. 10,009 is dismissed. The judgments and sentences in No. 10,010 are affirmed.