## EISLER *v.* UNITED STATES.

No. 255.   Argued March 28, 1949.—Decided June 27, 1949.

*David Rein* and *Abraham J. Isserman* argued the cause for petitioner.  With them on the brief were *Carol King* and *Joseph Forer.*

*Solicitor General Perlman* argued the cause for the United States.  With him on the brief were *Assistant Attorney General Campbell, Robert L. Stern, Robert S. Erdahl* and *Harold D. Cohen.  Attorney General Clark* was also with *Mr. Perlman* on a memorandum.

Briefs of *amici curiae* supporting petitioner were filed by *Arthur Garfield Hays* and *Osmond K. Fraenkel* for the American Civil Liberties Union; *Lee Epstein* for the American Committee for Protection of Foreign Born; *Robert W. Kenny, Bartley C. Crum* and *Martin Popper* for Herbert Biberman et al.; *Robert J. Silberstein* and

*Arthur G. Silverman* for the National Lawyers Guild; and *O. John Rogge* and *Benedict Wolf* for Edward K. Barsky et al.

PER CURIAM.

Petitioner's flight from the country after the grant of his petition for writ of certiorari and after the submission of his cause on the merits necessitates a decision as to the disposition now to be made of this case. Since the petitioner by his own volition may have rendered moot any judgment on the merits, we must, as a matter of our own practice, decide whether the submission should be set aside and the writ of certiorari dismissed or whether we should postpone review indefinitely by ordering the case removed from the docket, pending the return of the fugitive.

Our practice, however, has been to order such cases to be removed from the docket. *Smith* v. *United States,* 94 U. S. 97; *Bonahan* v. *Nebraska,* 125 U. S. 692. We adhere to those precedents. Accordingly after this term the cause will be left off the docket until a direction to the contrary shall issue.

While MR. JUSTICE BURTON has not participated in the consideration of the merits of this case, he has participated in this procedural action based upon the memorandum filed by the United States of America calling the attention of the Court to the petitioner's flight from justice.

MR. JUSTICE FRANKFURTER, with whom THE CHIEF JUSTICE joins, dissenting.

The Government has brought to the Court's attention the circumstances which, in its view, have deprived the Court of jurisdiction to adjudicate this case. Accordingly the Government, by way of suggestion, has moved the Court for its dismissal. The motion should be granted for the following reasons:

1. Eisler was convicted for contempt of Congress by the United States District Court for the District of Columbia and invoked the jurisdiction of this Court by a petition for certiorari filed August 31, 1948, seeking the determination of questions some of which at least we regarded as important enough to warrant review. We accordingly granted his petition. 335 U. S. 857. The case was argued March 28, 1949, and awaited only final disposition when, on May 6, 1949, the petitioner fled the United States. On May 13, the Attorney General requested the Secretary of State to make application through the usual diplomatic channels for the return of Eisler to the United States. That application was made, it was resisted by Eisler, and on May 27 the English court with final authority in such matters dismissed it on the ground that the crime for which Eisler's extradition was sought—the making of false statements in an application for an exit permit—was not extraditable. Since then Eisler has formally repudiated the jurisdiction of this country and has been elected to political office in a foreign country. The Attorney General has abandoned all attempts to secure his return. The upshot is that the abstract questions brought before the Court by Eisler are no longer attached to any litigant. No matter remains before us as to which we could issue process.

2. Very early after the Republic was founded it was confronted by an emergency in which its very existence was threatened. Serious questions touching the legal power of the President to deal with the crisis arose, and Washington sought answers to these legal questions from this Court. Even under circumstances so compelling, the first Chief Justice and his Associates had to deny President Washington's request for aid because the Constitution gave this Court no power to give answers to legal questions as such but merely the authority to decide them when a litigant was before the Court. See 3 Johnston, Correspondence and Public Papers of John Jay 486

(1891); 10 Sparks, Writings of George Washington 542 (1840). That recognition of the limited power of this Court has been unquestioned ever since 1793. It has been the principle by which cases formally before the Court have again and again been dismissed as beyond its jurisdiction. The circumstances which have called forth application of the principle have varied greatly, but all the instances of its application illustrate and confirm the basic limitation under which this Court functions, namely, that it can entertain a case and decide it only if there is a litigant before it against whom the Court may enforce its decision.

3. If legal questions brought by a litigant are to remain here, the litigant must stay with them. When he withdraws himself from the power of the Court to enforce its judgment, he also withdraws the questions which he had submitted to the Court's adjudication. The questions brought by Eisler have evaporated so far as the Court's power to deal with them is concerned because the rights and obligations of a litigant no longer depend on their answer. The Court therefore lacks jurisdiction as it lacked jurisdiction to answer Washington's questions. Not to dismiss the case for want of jurisdiction can only mean that the Court has jurisdiction and therefore must retain the case. And this, in turn, can only mean that the Court's eventual action must await the pleasure of Eisler and of every future litigant who, having invoked the Court's jurisdiction, withdraws himself beyond the means of asserting it. Eisler's political affiliation, of course, does not distinguish him from other litigants. It was irrelevant when the Court took his case at a time that it had jurisdiction over him; it is equally irrelevant to recognition of the fact that Eisler has put himself definitively beyond the Court's process were it to decide against him. Since the Court is without power effectively to decide against him, it is without power to decide at all. In

short, the Court no longer has jurisdiction, and it would be equally without jurisdiction if Eisler were the Bourbon pretender.

4. This case has nothing in common with instances cited as precedent for leaving it off the docket until a direction to the contrary shall issue. *Smith* v. *United States,* 94 U. S. 97; *Bonahan* v. *Nebraska,* 125 U. S. 692. In those cases convicts had broken jail while their cases were pending in this Court and remained at large. As a matter of practical good sense, apparently upon informal suggestion, the Court suspended disposition of the cases until it should receive word from the sheriff who reported the escape that a recapture had been accomplished. Such jailbreaks, indeed, as often as not imply a merely temporary separation from confinement. But whatever may be thought of such a light-reined way of dealing with a jailbreak from our local jails, the situation presented by this case is totally different. Here we have the most formal kind of resistance to the jurisdiction of this Court. It has been adjudicated successful, and the Attorney General has had to yield. Since the Court's power to reassert jurisdiction has been incontestably denied, the motion should be granted.

Mr. Justice Murphy, dissenting.

The petitioner is an alien, a Communist, and a fugitive from justice. He was convicted of willful default before a Committee of Congress. We decided to hear this case after determining that the issues he presented were of importance. We heard argument, read briefs, and all but made the announcement of our decision.

Then the petitioner left the country. Efforts at extradition in Great Britain were unsuccessful. The petitioner is now beyond the territorial jurisdiction of this Court. It is argued that we are therefore without jurisdiction in the case.

We can decide only cases or controversies. A moot case is not a "case" within the meaning of Art. III. *United States* v. *Evans,* 213 U. S. 297. But a moot case is one in which the particular controversy confronting the Court has ended. That is not true when a prisoner has simply escaped. We are not at liberty to assume that all escaped defendants will never return to the jurisdiction. And the importance of a criminal judgment is not limited to the imprisonment of the defendant. Thus an alien convicted of crime is excluded from admission to the United States, 8 U. S. C. § 136 (e).

Since the question is one of jurisdiction, the unlikelihood of prejudice to this petitioner is irrelevant. Equally irrelevant on the question of mootness is President Washington's request for an advisory opinion. That the case may become moot if a defendant does not return does not distinguish it from any other case we decide. For subsequent events may render any decision nugatory. The petitioner having subjected himself to our jurisdiction by filing a petition for review, he cannot now revoke or nullify it and thus prevent an adjudication of the questions at issue merely by leaving the country and repudiating its authority. Thus I entirely agree with those of my brethren who believe we have jurisdiction.

But the Court adopts another alternative. It exercises its discretion and refuses to decide the issue. It is clear, however, as MR. JUSTICE JACKSON points out, that it is the importance of the legal issues, not the parties, which bring the case to this Court. Those issues did not leave when Eisler did. They remain here for decision; they are of the utmost importance to the profession and to the public.

Law is at its loftiest when it examines claimed injustice even at the instance of one to whom the public is bitterly hostile. We should be loath to shirk our obligations, whatever the creed of the particular petitioner. Our

country takes pride in requiring of its institutions the examination and correction of alleged injustice whenever it occurs. We should not permit an affront of this sort to distract us from the performance of our constitutional duties.

I dissent.

Mr. Justice Jackson, dissenting.

I cannot agree that a decision of Eisler's case should be indefinitely deferred, awaiting what I do not know. The case is fully submitted and all that remains is for members of the Court to hand down their opinions and the decision. Eisler's presence for that would be neither necessary nor usual. The case has reached this stage at considerable detriment to the country, since this Court's grant of his petition for review was what delayed Eisler's commencement of sentence and afforded him opportunity to escape. If ever there were good reasons to grant him a review, they are equally good reasons for now deciding its issues.

The Rules of this Court provide that we shall grant a petition for review here only where there are *"special and important reasons* therefor."  They limit such cases to those that present "a question of *general importance* . . . which *has not been, but should be, settled by this court."*  Rule 38.  (Emphasis supplied.)

Under our practice, the grant of Eisler's petition meant that four Justices of this Court, at least, were in agreement that the questions he raised were of this description.  If they were then, they are still.  His petition challenged the power of Congress and its investigating committees to hold, and to control the procedures of, investigations of this nature.  These questions are recurring ones, certain to be repeated, for the grant of a review has cast doubt not only on the validity of Eisler's conviction but upon congressional procedures as well.

No one can know what the law is until this case is decided or until someone can carry a like case through the two lower courts again to get the question here.

Decision at this time is not urged as a favor to Eisler. If only his interests were involved, they might well be forfeited by his flight. But it is due to Congress and to future witnesses before its committees that we hand down a final decision. I therefore dissent from an expedient that lends added credence to Eisler's petition, which I think is without legal merit. I do not think we can run away from the case just because Eisler has.

I should not want to be understood as approving the use that the Committee on Un-American Activities has frequently made of its power. But I think it would be an unwarranted act of judicial usurpation to strip Congress of its investigatory power, or to assume for the courts the function of supervising congressional committees. I should affirm the judgment below and leave the responsibility for the behavior of its committees squarely on the shoulders of Congress.[1]

---

[1] What the Congress can with safety do, after this Court's decision in *Christoffel* v. *United States, ante,* p. 84, seems to present a good question.