## UNITED STATES v. GILMORE.

### No. A–6494.

United States District Court
N. D. West Virginia, Fairmont Division.

July 7, 1953.

Howard Caplan, U. S. Atty. of Clarksburg, W. Va., H. Clare Hess, of Fairmont, W. Va., and Milford L. Gibson, of Kingwood, W. Va., Asst. U. S. Attys., for the government.

George Shedan and William Bruce Hoff, of Parkersburg, W. Va., and Carl Bachmann, of Wheeling, W. Va., for defendant.

WATKINS, District Judge.

On January 16, 1953, defendant Milton A. Gilmore, was found guilty by verdict of a jury on each of three counts of attempting to defeat and evade his income taxes by filing false and fraudulent income tax returns in violation of Section 145(b) of the Internal Revenue Code, 26 U.S.C.A. The defendant was an occulist and was charged with failing to report $24,754.33 received by him as rebates or kickbacks from a single optical company to whom he sent patients to have their prescriptions for eye glasses filled. Further sums aggregating $20,300.60, not covered by the indictment, were received from the same source, for other years, making a grand total of $45,054.93 in rebates or kickbacks, none of which was included in his income tax returns. Following the return of the jury verdict, defendant was committed to the custody of the marshal, whereupon he claimed that he was ill. A physician was called and he was taken to a hospital after the physician reported that he was ill. Because of his illness he was admitted to bail in the amount of $5,000.

On January 19, 1953, he made a motion to set aside the verdict and grant him a new trial. The court has set this motion down for hearing on many different dates and has ordered and directed the defendant to appear, but defendant has refused to appear. He has fled to Canada, beyond the jurisdiction of this court, and has said that he does not intend to return. He has either disposed of his personal assets or taken most of them out of the jurisdiction of this court. He has indicated that he has been advised that he can not be extradited for the particular offense of which he has been convicted by the jury. The offense of income tax evasion is not now an extraditable offense under our treaty with Canada. He is now a fugitive from justice residing with his family in Canada. He still refuses to return to the jurisdiction of this court in order that the court may hear his motion for a new trial and decide same.

His motion for a new trial was set for March 2, 1953, in order to give his counsel time to have the record transcribed and to prepare briefs, at which date defendant was directed to appear. The case was continued to March 3 at request of defendant's counsel, but defendant did not appear, and the government moved for forfeiture of his appearance bond. The court continued the matter to March 17, 1953, to give the defendant a further opportunity to be present or to explain his absence. On March 17, 1953, defendant again failed to appear in person. His counsel did appear and indicated that they had communicated with him, and that he had indicated that he did not intend to return to the jurisdiction of this court.

At the time the court said:

"There are strong indications that Dr. Gilmore does not intend to return to the United States. I think I would be justified now in forfeiting his bond, and issuing a warrant for his arrest. But I'm not going to take that action today. I want to give Dr. Gilmore every opportunity to voluntarily return to his native land, the United States of America, as required by law. If he is ill and unable to return, I want to excuse him until he is able to fly back to the United States. His bond required him to be here on March 3. When he did not appear a motion was made to forfeit his bond. I continued the hearing on that motion and on his motion for a new trial for two weeks, or until today, to give him an opportunity to appear or to produce medical evidence showing his inability to appear. He is not here today and produces no evidence to excuse his failure to appear. His physician in Canada says that he is able to be here today.

"If the doctor has made up his mind not to return to the United States, I think he is making a mistake that he will live to regret. Surely he does not want to give up his friends, his profession and his country and live in a foreign land as a fugitive from justice the remainder of his life. Surely he does not want to leave forever the country which gave him birth and gave him the opportunity of attaining the success which he has enjoyed both pro-

fessionally and financially. I want to give him a full opportunity to reconsider any hasty action he may have taken because of illness or worry.

"His case has not yet ended. His attorneys have filed a motion asking me to set aside the verdict of the jury. If that motion was granted he would get a new trial. If it was denied he would have an appeal to a higher court to determine if there was sufficient evidence for the jury to find him guilty, or if the trial judge committed error.

"I am going to continue the hearing on the forfeiture of his bond and on his motion for a new trial for about one more month, until April 16, 1953, at two o'clock P.M., to give him an opportunity to be here or produce medical evidence to excuse his absence."

On April 16, the defendant again failed to appear as ordered by the court. No medical evidence was produced to excuse his absence. No effort was made by his counsel to excuse his failure to appear. Counsel indicated that a copy of the remarks of the court had been sent to the defendant, and they had told him that he was making a mistake in refusing to return to the United States. The government renewed its motion for forfeiture of the bail bond which it had previously made on March 3. The court ordered that the bail bond be forfeited, and the government moved that the court enter judgment against the defendant and his surety on the forfeited recognizance. This motion was set for hearing on May 18.

The government then assigned additional grounds for the denial of defendant's motion for a new trial. The court set that matter, and all matters arising upon defendant's motion for a new trial, down for hearing on June 12, 1953.

On May 18, 1953, defendant again failed to appear. Judgment was entered in favor of the government and against the defendant, as principal, and his surety, on the forfeited recognizance. Such judgment thereupon was paid by defendant's surety, she having theretofore sent her certified check to the clerk of the court for that purpose.

On May 28, 1953, the government filed its motion to dismiss and strike defendant's motion for a new trial. It thereupon gave notice of hearing on said motion. The motion was continued until this date. The clerk of this court has notified the defendant by mail of all dates of hearings. Defendant has attended none of them.

The government urges that the motion of defendant to set aside the verdict and grant a new trial should be dismissed and stricken from the record, and should be denied, for the following reasons:

1. Defendant has fled the country; has placed himself beyond the jurisdiction of this court; has placed himself beyond the jurisdiction of the United States of America; has failed to appear in this court, in person, as ordered by this court; is a fugitive from justice; and has made no showing whatsoever that he intends to return to the United States of America, or to the jurisdiction of this court;

2. Defendant has abandoned his motion to set aside the verdict and grant a new trial. When defendant brings legal questions to this court for decision the defendant must stay with them. When the defendant flees the jurisdiction of the court and places himself beyond the court's power to enforce its judgment, he thereby abandons the questions which he had submitted to the court for adjudication.

3. Defendant has withdrawn his motion to set aside the verdict and grant a new trial. By withdrawing himself from the power of the court to enforce its judgment, defendant thereby also withdraws the questions which he had submitted to the court by his said motion for adjudication; and,

4. Defendant has failed to prosecute his motion to set aside the verdict and grant a new trial. He has failed to appear in this court, in person, as ordered by the court, to prosecute his aforesaid motion, and effect the completion of his case.

The motion of the government is based, in part, on the case of Eisler v. United States, 338 U.S. 189, 69 S.Ct. 1453, 93 L.Ed. 1897, and on modification of the order of the Supreme Court in the same case, reported in 338 U.S. 883, 70 S.Ct. 181, 94 L.

Ed. 542. Counsel for the government and defendant all agree in briefs filed that the dissenting opinion of Mr. Justice Frankfurter, with whom the Chief Justice joined, has become the majority opinion of the court by reason of the modification of the original order.

Eisler fled the country after the Supreme Court granted certiorari, 335 U.S. 857, 69 S.Ct. 130, 93 L.Ed. 857, and after the case had been argued, but before decision of the submitted issues by the Supreme Court.

In his opinion Justice Frankfurter said [338 U.S. 189, 69 S.Ct. 1455]:

"If legal questions brought by a litigant are to remain here, the litigant must stay with them. When he withdraws himself from the power of the Court to enforce its judgment, he also withdraws the questions which he had submitted to the Court's adjudication."

Another case in point is Allen v. State of Georgia, 166 U.S. 138, 17 S.Ct. 525, 41 L.Ed. 949. There the defendant was convicted in a state court of murder, after which he sued out a writ of error from the Supreme Court of the State of Georgia.

"On the day assigned for its hearing it appeared from affidavits that the accused had escaped from jail, and was at that time a fugitive from justice. The court thereupon ordered the writ of error dismissed unless he should within sixty days surrender himself or be recaptured, and when that time passed without either happening, the writ was dismissed. He was afterwards recaptured, and resentenced to death, whereupon he sued out this writ of error, assigning as error that the dismissal of his writ of error by the Supreme Court was a denial of due process of law. Held, that the dismissal of the writ of error by the Supreme Court of the State was justified by the abandonment of his case by the plaintiff in the writ."

On page 141, of 166 U.S., on page 526 of 17 S.Ct. the court said:

"We cannot say that the dismissal of a writ of error is not justified by the abandonment of his case by the plaintiff in the writ. By escaping from legal custody, he has, by the laws of most, if not all, of the States, committed a distinct criminal offense; and it seems but a light punishment for such offense to hold that he has thereby abandoned his right to prosecute a writ of error, sued out to review his conviction; otherwise he is put in a position of saying to the court: 'Sustain my writ, and I will surrender myself, and take my chances upon a second trial; deny me a new trial, and I will leave the state, or forever remain in hiding.' We consider this as practically a declaration of the terms upon which he is willing to surrender, and a contempt of its authority, to which no court is bound to submit. It is much more becoming to its dignity that the court should prescribe the conditions upon which an escaped convict should be permitted to appear and prosecute his writ than that the latter should dictate the terms upon which he will consent to surrender himself to its custody.

"The course pursued in this case is approved by the ruling of many courts in different states, and notably in the case of Com. v. Andrews, 97 Mass. 543, where the defendant escaped during the pendency of his case in the supreme court. It was held that, not being present in person, he could not be heard by attorney; that, if a new trial were ordered, he was not there to answer further; and that, if the exceptions were overruled, a sentence could not be pronounced or executed upon him, [97 Mass.] page 544. 'So far as the defendant had any right to be heard under the constitution, he must be deemed to have waived it by escaping from custody, and the failing to appear and prosecute his exceptions in person, according to the order of court under which he was committed.' In Sherman v. Com., 14 Grat. [Va.] 677, upon a similar state of facts, the court ordered that the writ of error be dismissed, unless the defendant should appear before a certain day."

See also United States v. Billingsley, D. C., 242 F. 330; Bonahan v. State of Nebraska, 125 U.S. 692, 8 S.Ct. 1390, 31 L.Ed. 854, and Smith v. United States, 94 U.S. 97, 24 L.Ed. 32. In the Smith case the court refused to hear that criminal case because the party seeking relief was not where he could be made to respond to the judgment of the court, and therefore the court entered a dismissal for lack of prosecution.

Counsel for the defendant have opposed the motion to strike. They do not deny that defendant is a fugitive and there is no denial as to the factual situation. They say that the Eisler case and the other cases cited above can be distinguished on the ground that those cases were appeals following a sentence; that here defendant has been found guilty by a jury but he has not been sentenced. I see no merit in this point and am unable to reach a different conclusion than that reached in the Eisler case.

Unless the defendant surrenders to the jurisdiction of this court on or before the first day of the next regular term of this court to be held at Fairmont, West Virginia, on the 2d day of September, 1953, an order will be entered striking and dismissing the motion for a new trial. An order may be entered accordingly.