**UNITED STATES of America,**
**Plaintiff-Appellee,**

v.

**Robert D. GOLDEN, Defendant-**
**Appellant.**
**No. 35, Docket 24111.**

United States Court of Appeals
Second Circuit.
Argued Oct. 1–2, 1956.
Decided Nov. 13, 1956.

Jacob M. Goldenkoff, New York City, for defendant-appellant.

John A. Keeffe, Asst. U. S. Atty., New York City (Paul W. Williams, U. S. Atty., and Maurice N. Nessen, Asst. U. S. Atty., New York City, on the brief), for plaintiff-appellee.

Before FRANK, MEDINA and HINCKS, Circuit Judges.

HINCKS, Circuit Judge.

This is an appeal by the defendant from denial of his pre-trial motion to dismiss an indictment which charged that on October 27, 1952 he knowingly and wilfully failed and neglected to report for induction into the armed forces of the United States in violation of 50 U.S.C.A. Appendix, § 462. The motion below alleged that the court was without jurisdiction in the premises on the following grounds: that on October 27, 1952, the defendant was not a citizen or national of the United States nor a resident alien subject to the Universal Military Training & Service Act and not then subject to its jurisdiction; that on October 24, 1952, the defendant had duly renounced his United States citizenship and nationality before the United States Consul at Bangkok, Thailand and thereupon ceased to be a citizen and national of the United States and, as such, subject to the provisions of said Act; and that for said reasons the grand jury in "making the charges set forth in the indictment herein, acted in error." These allegations of the motion were supported by an affidavit of the defendant's attorney which amplified the motion as follows: the defendant is a native of the United States who left the United States on July 20, 1952 and has not returned since; before leaving the United States he had duly registered under the Act, offered himself before his draft board for induction into the Armed Services thereof and was not accepted; he left the United States with the necessary permission and notified his draft board of his destination; on August 16, 1952 he arrived in Thailand, entered the University of Bangkok for graduate work therein and has remained in Thailand ever since.

The motion, without answer or counter affidavit by the Government, was denied by the judge below in a terse memorandum as follows:

"Defendant moves to dismiss the indictment; he resides in Thailand and has not surrendered or been arrested under the indictment. The defendant may not without surrendering himself, in absentia, contest the validity of the indictment or its sufficiency.

"Motion denied."

The appeal was taken directly from this order.

We hold that the order appealed from was interlocutory and as such not a "final decision" within our appellate jurisdiction as defined in 28 U.S.C.A. § 1291. It was so held in Atlantic Fishermen's Union v. United States, 1 Cir., 195 F.2d 1021, 1023. There the defendants, like the defendant here, moved in advance of trial to dismiss the indictment for lack of jurisdiction because the status of the defendants was such that they were not indictable under the Act on which the indictments were laid. The court dismissed the appeal saying:

"With exceptions in no way material here (Title 28 U.S.C.A. § 1292) our appellate jurisdiction is limited by Title 28 U.S.C.A. § 1291 to 'final decisions' of the district courts. And 'A "final decision" generally is one which ends the litigation on the merits and leaves nothing for the court to do but execute the judgment.' Catlin v. United States, 1945, 324 U.S. 229, 233, 65 S.Ct. 631, 633, 89 L.Ed. 911. Certainly the orders appealed from do not by any stretch

of the imagination end the litigation in which they were entered and leave nothing for the court below to do but to execute its judgment. Indeed there is no judgment, but on the contrary the result of the orders is to leave the case standing for answer and eventual trial."

As was said in Catlin v. United States, 324 U.S. 229, 236, 65 S.Ct. 631, 635: "But denial of a motion to dismiss, even when the motion is based upon jurisdictional grounds, is not immediately reviewable." See also Berman v. United States, 302 U.S. 211, 58 S.Ct. 164, 82 L.Ed. 204; Cobbledick v. United States, 309 U.S. 323, 60 S.Ct. 540, 84 L.Ed. 783; Cogen v. United States, 278 U.S. 221, 49 S.Ct. 118, 73 L.Ed. 275; Heike v. United States, 217 U.S. 423, 30 S.Ct. 539, 54 L.Ed. 821; Dowling Bros. Distilling Co. v. United States, 6 Cir., 153 F.2d 353, certiorari denied sub nom. Gould v. United States, 328 U.S. 848, 66 S.Ct. 1120, 90 L.Ed. 1622; United States v. Tiplitz, 3 Cir., 202 F.2d 60.

The appellant cites our decisions in Hotch v. United States, 9 Cir., 212 F.2d 280, and United States v. Hartman, 2 Cir., 209 F.2d 366, as well as various district court decisions in which convictions were set aside on jurisdictional grounds. But these cases are completely irrelevant to the instant case which has not yet gone to judgment and in which, for aught that appears, the defendant may ultimately be acquitted and thus have no cause for appeal.

■■■ By reply brief the appellant attempts to develop the thesis that the order below is appealable under the "offshoot rule" of Cohen v. Beneficial Indus. Loan Corp., 337 U.S. 541, 69 S.Ct. 1221, 93 L.Ed. 1528. This position is untenable. Parr v. United States, 351 U.S. 513, 76 S.Ct. 912.

Appeal dismissed.

FRANK, Circuit Judge (concurring).

I agree that, for the reasons stated in my colleagues' opinion, denial of appellant's motion was not appealable as a final decision under 28 U.S.C.A. § 1291. I do not, however, wish my participation in this decision to be taken as implying a belief that, in a case of this nature, the appeal should not be treated as a petition for mandamus [1] or that, in appropriate circumstances in a criminal action, a writ of mandamus ordering the District Court to decide the motion on its merits, should not issue.[2] I place my concurrence solely

---

[1] Judge Learned Hand and I have both protested the view, adopted by this court in civil cases, that the form of the papers is controlling and that when the case comes before us labeled "appeal" we cannot consider it as an application for a prerogative writ. I have felt constrained to follow the precedents laid down by this court in this respect. See Magnetic Engineering & Manufacturing Co. v. Dings Manufacturing Co., 2 Cir., 1949, 178 F.2d 866, 870; United States ex rel. Sutton v. Mulcahy, 2 Cir., 1948, 169 F.2d 94, 97; Zamore v. Goldblatt, 2 Cir., 1953, 201 F.2d 738, 739. When doing so, however, I have protested the irrationality involved in the exaltation of labels by this court when at the same time we have rejected antiquated procedural technicalism on the trial court level. See dissenting opinions in Zamore v. Goldblatt, supra, 201 F.2d at page 739; Magnetic Manufacturing Co. v. Dings Manufacturing Co., supra, 178 F.2d at pages 870, 871. Moreover, the Supreme Court has just recently indicated that it will disregard the form in which an appeal is taken or sought to be taken, treating "appeal" papers as petitions for certiorari. Nunn v. California, 77 S. Ct. 126, and Pocatello Building & Construction Trade Council v. C. H. Elli Construction Co., 77 S.Ct. 130, both decided November 5, 1956.

In any event, as I have repeatedly stated, I do not feel bound by our precedents in criminal cases where I think they are wrong and are adverse to the accused. U. S. v. Scully, 2 Cir., 225 F.2d 113, 118–119; U. S. v. Gonzales Castro, 2 Cir., 228 F.2d 807, 808, at page 810. I would not do so here.

[2] The Supreme Court has several times indicated its reluctance to review, in criminal cases, orders which are not "final." It should be noted that the rationale behind the requirement of finality has been that " * * * encouragement of delay is fatal to the vindication of the criminal law." Cobbledick v.

on the ground that, on the facts as alleged by appellant, he will not suffer such irreparable harm or danger, from denial of his motion below, as would warrant the issuance of a prerogative writ in cases of this sort.

The District Judge ruled that defendant could not contest in absentia the validity of an indictment, brought for failure to report for induction under 50 U.S. C.A.Appendix, § 462, without first surrendering himself. This order has the effect of requiring defendant to travel thousands of miles to procure the quashing of an indictment which (if what he says is true, as we must assume for the purposes of this decision) should be set aside on the basis of documents in the possession of the government and which, on the present record of the case before us, must be deemed to be maintained by the government solely for the purpose of harassment and annoyance.

In order to convict the defendant the government, as it concedes in its brief, would have to prove that he was a United States citizen at the time he was due to report for induction. Under the provisions of 8 U.S.C.A. § 1481, a citizen of the United States may lose his citizenship by making formal renunciation of nationality before a diplomatic or consular officer in the form provided for by the Secretary of State. Appellant alleges —and the government does not deny— that he made such formal renunciation two days before he was scheduled to report for induction. If this is true—and it seems hardly likely that appellant would make such an allegation if it were not true, since the records of this renunciation would be in the possession of the State Department—it would appear that he was not a citizen at the time he was to report for induction and that therefore the government could not in good faith bring him to trial on the indictment.

I do not believe there is any authority for the District Judge's ruling that, invariably, a defendant must incur the expense of a many-thousand-mile journey to submit himself to the jurisdiction of the court, in order to have an indictment quashed. It is true that the Supreme Court in Eisler v. U. S., 1949, 338 U.S. 189, 69 S.Ct. 1453, 1454, 93 L.Ed. 1897, refused to hear an appeal from a conviction on the ground that the petitioner, by his flight after conviction, "by his own volition may have rendered moot any judgment on the merits." But this appellant can scarcely be considered a fugitive in the position of appellant in Eisler, or the appellants in Allen v. Georgia, 1897, 116 U.S. 138, 17 S.Ct. 525, 41 L.Ed. 949, and U. S. v. Gilmore, D.C. N.D.W.Va.1953, 113 F.Supp. 510. Before leaving the United States the defendant duly registered under the Universal Military Training and Service Act. He departed for Thailand with the permission of his draft board and notified the board of his destination, and he alleges that, before leaving, he offered himself for induction into the Armed

U. S., 1940, 309 U.S. 323 at page 325, 60 S.Ct. at page 541. Such reasoning is inapplicable in a case where, due to absence of the accused, trial on the merits might take place many years hence. So, in this case, review of a non-final order by prerogative writ would speed up rather than delay a final adjudication. It is also true that the Supreme Court often, and as recently as Parr v. U. S., 351 U.S. 513, at page 520, 76 S.Ct. 912, has held that the power to issue extraordinary writs is discretionary and to be sparingly exercised. However, in Parr the Court noted that the application for a writ of mandamus was not presented, on the issue in question, to the

Court of Appeals and was made for the first time to the Supreme Court. Professor Moore has noted that courts of appeals might well grant extraordinary writs where the Supreme Court would be justified, by press of business and other considerations, to refuse review. 6 Moore's Federal Practice (2d ed.) p. 73; Goldblatt v. Inch, 2 Cir., 203 F.2d 79, 80, particularly footnote 3. Therefore, even if the Supreme Court had denied mandamus in a case on all fours with this one, I would incline to take the position that this court could exercise its discretion as to the granting of the writ.

Services and was not accepted. I think we cannot reasonably apply (a) the rationale of cases in which courts refused to hear an appeal because the appellant fled the jurisdiction while his appeal was pending to (b) an instance where a motion is made to quash an indictment brought against a non-citizen after he lawfully left the country.

True, appellant seeks to set aside an indictment, not on the ground that the indictment is invalid on its face, but because unimpeachable evidence would show that the indictment should never have been brought because there has been absent from the start a vital prerequisite to penal liability. I do not, however, subscribe to the view that, on a motion to quash, defendant is limited to showing that the indictment is invalid on its face. As Judge Learned Hand stated in United States ex rel. Scharlon v. Pulver, 2 Cir., 1931, 54 F.2d 261, 264:

> "Suppose for example that [the accused] could prove by unimpeachable contemporaneous documents that at the time [charged in the indictment] he was physically incapable of committing the crime, as for example, that he was in the hospital recovering from an operation. No commissioner who rationally considered such evidence at all, could fail to discharge him."

See also United States v. Masaaki Kuwabara, D.C.N.D.Cal.1944, 56 F.Supp. 716 where a motion to quash an indictment was granted by the District Court, the motion being predicated on physical inability to report for a preinduction physical examination since, at the time charged, defendant was confined in a detention camp by the government.

Accordingly, I think the District Court in this case had the power and duty to decide the merits of the motion on the basis of the documents. I concur, however, on the ground that, on the facts as stated by appellant, he had such an open-and-shut case, based on papers in the possession of the State Department, that it is doubtful whether the government would attempt to bring him to trial if and when he returns to this country, and that, in the event that it did, he could no doubt have the case summarily dismissed at any time. Therefore, I do not think appellant is placed in such jeopardy by the decision below as to warrant the issuance of a prerogative writ. On the other hand, in a case where there was a risk that the documents might be destroyed or lost before the defendant returned, or where his motion to quash would be based on testimony of witnesses or other evidence which might become unavailable in the interim, I am not willing to say that a writ of mandamus should not issue, ordering the District Court to decide the motion immediately and in appellant's absence.