KEARSE, Circuit Judge:
Defendant Violet Drexler (“Violet”) appeals from a July 17, 1984 order of the United States District Court for the Southern District of New York, John F. Keenan, Judge, continuing and refusing to modify earlier orders that preliminarily restrained Violet from transferring or disposing of any of her property and directed her to deliver to her attorney, as escrow agent, all of her property capable of delivery pending trial of certain claims brought against her and her former husband William R. Drexler (“William”) by plaintiff David M. Green, the trustee in bankruptcy (the “Trustee”) of companies formerly owned and controlled by William or Violet. 42 B.R. 355 (S.D.N.Y.1984). On appeal, Violet claims principally that the district court lacked statutory authority to grant the turnover order and that it applied erroneous standards in issuing its preliminary injunctions. The Trustee has moved to dismiss the appeal on the ground that the order is not appealable under 28 U.S.C. §§ 1291 or 1292(a) (1982), or, alternatively, on the ground that Violet may not appeal the order because she is in contempt of it. For the reasons below, we decline to dismiss the appeal and we affirm the order of the district court.
I. Background
This appeal arises from an adversary proceeding brought in the United States Bankruptcy Court for the Southern District of New York by the Trustee against William and Violet Drexler to recover funds allegedly improperly paid to them by Feit & Drexler, Inc., Frank Feit Associates, Inc., and William R. Drexler International, Inc. (collectively the “Drexler Companies”), each currently a debtor in an involuntary Chapter 7 bankruptcy proceeding. The Trustee’s complaint alleged conversion, corporate waste and mismanagement, breach of fiduciary duty, fraudulent conveyance, and fraudulent transfer; it sought money damages, a prejudgment attachment of William and Violet’s property, and a preliminary injunction restraining William and Violet from transferring or disposing of any of their property.
After filing the complaint, the Trustee obtained from the bankruptcy court a preliminary injunction enjoining Violet from transferring or encumbering her interest in any real property, particularly her home in Belleair, Florida. The court granted the injunction in an order dated September 27, 1983 (“September 27 Order”), finding, inter alia, “that there were sufficiently serious questions going to the merits to make them a fair ground for litigation, and that the balance of hardships tipped decidedly toward the trustee.” Violet took no appeal from the September 27 Order, and the adversary proceeding was subsequently transferred to the district court, pursuant to the Southern District’s Emergency Rule of Bankruptcy Procedure I, § (d)(1), where it was assigned to Judge Keenan.
The Trustee proceeded in his investigations of William, Violet, and the Drexler Companies. In sworn deposition testimony, Violet stated that she had no substantial assets other than her Florida residence and an unvested interest in a pension fund. She testified that she had no bank accounts other than several small checking accounts in New York and Florida, owned no commodities, had no brokerage accounts, and had never had any communication with any brokers or brokerage firms. She testified that she had no accounts in Swiss banks and had never done any banking in Switzerland; she denied ever having been a shareholder, officer, or director of any of the Drexler Companies; she stated that she had never managed any business or financial functions for the Drexler Companies although she admitted that, for a limited *409 period of time, she had had authority to sign checks on behalf of some of them. Violet stated that her only work for the Drexler Companies had been on a part-time basis with responsibility only for scheduling clerical staff, and that her annual salary was “probably less” than $30,000. There was also testimony by William, who agreed that Violet had performed limited services for the Drexler Companies; William’s testimony indicated, however, that in the period 1977-1980, Violet had been paid some $616,000.
• In the meantime, the Trustee discovered that, contrary to Violet’s deposition testimony, there existed several bank accounts at Swiss Bank Corporation in Zurich, Switzerland, in the name and for the benefit of William, Violet, or one of the Drexler Companies. The Trustee obtained an attachment of those accounts by the Zurich Debt Collector’s Office in early February 1984. Swiss Bank Corporation, in a letter to the Debt Collector’s Office, confirmed the existence and attachment of four such accounts, stating that they were maintained in Violet’s name and contained approximately 635,000 Swiss francs (then worth approximately $285,000). In late May 1984, the Trustee also obtained evidence that, again contrary to Violet’s testimony, Violet maintained accounts with the brokerage firm of J.B. Hanauer & Co. (“Hanauer”).
Accordingly, on June 7, 1984, the Trustee moved in the district court for a preliminary injunction restraining Violet from transferring or encumbering any of her property and a prejudgment attachment of all such property; he sought ex parte a temporary restraining order prohibiting Violet, pending determination of the injunction and attachment motions, from transferring or encumbering any interest she might have in any brokerage account. The Trustee argued that Violet’s false testimony at her deposition showed an intention to secrete her assets so as to avoid paying any judgment obtained against her by the Trustee. The application was supported by (1) the Trustee’s affidavit describing the issuance of the, September 27 Order, the testimony of Violet and William, and the Trustee’s discovery of the Swiss bank accounts and the brokerage accounts, and (2) copies of the September 27 Order, the pertinent testimony, and the letter from Swiss Bank Corporation confirming Violet’s record ownership of and the Trustee’s attachment of the Swiss bank accounts.
■On June 7, 1984, the district court issued a temporary restraining order “restrainpng] and prohibit[ing Violet] from transferring, mortgaging, encumbering, or dissipating in any way any interest which [she] may have in any brokerage accounts or assets maintained therein,” and ordered Violet to show cause on June 15, 1984, why the Trustee’s application for a preliminary injunction and attachment should not be granted (“June 7 Order”).
Upon the issuance of the June 7 Order, the Trustee learned from Hanauer that bonds purchased by Violet through that firm had been turned over to Violet. The Trustee therefore sought and obtained from the district court on June 8 an ex parte order (“June 8 Order”) supplementing the June 7 Order by restraining Violet from transferring not only assets held in brokerage accounts but also securities held directly by her. Thus, Violet was “restrained and prohibited from transferring, mortgaging, encumbering, or dissipating in any way any interest which ... Violet Drexler may have in any securities, bonds, money-market instruments, or other non-demand deposits, or the proceeds therefrom____” (June 8 Order.)
On June 15, the return date of the June 7 order to show cause, the Trustee applied for further prejudgment relief against Violet in the form of a mandatory preliminary injunction ordering Violet to turn over to an escrow agent all her property capable of delivery. At the hearing held later that day, Violet requested additional time to prepare her opposition to the Trustee’s June 7 and June 15 applications. The Trustee stated that he had no objection, on condition that his application for a turnover order be granted on an interim basis.
*410 The district court granted Violet additional time and asked the Trustee to present his evidence supporting an interim turnover order. The Trustee submitted business records of Hanauer and authenticating and explanatory testimony of one of its agents showing that Violet had purchased $250,000 worth of municipal bonds from that firm in 1983. Violet offered no evidence.
On June 20, 1984, by Supplemental Temporary Restraining Order Compelling Turnover of Property (“June 20 Order”), the district court granted the Trustee’s request for an interim turnover of Violet’s property and
ORDERED that Violet Drexler, her agents, employees, and all persons holding property for her or acting in concert with her, are prohibited from transferring or disposing of any property of Violet Drexler except in accordance with this order or any further [order] of this court; and ... further
ORDERED that Violet Drexler, her agents, employees, and all persons holding property for her or acting in concert with her, are directed to transfer forthwith all property capable of delivery to [her attorney] who is hereby appointed caretaker of said property and directed to hold such property in safekeeping subject to further order of this court.
Violet did not comply with this order.
At the reconvened hearing on June 26, the Trustee submitted additional evidence, including tax returns and monthly financial statements of the Drexler Companies showing considerable losses; a complaint, filed by Violet in opposition to the Trustee’s attachment of the Swiss bank accounts, in which Violet stated that the funds in those accounts were her property; and a number of applications for insurance brokerage licenses filed on behalf of the Drexler Companies with the New York State Insurance Department, which listed Violet as an officer and substantial shareholder of those companies and were signed by Violet as an officer. Violet offered no evidence.
At the final hearing on the Trustee’s applications two weeks later, Violet moved to vacate or modify the outstanding temporary restraining orders on the grounds that the district court lacked statutory authority to grant the mandatory injunctive relief, that it lacked power to attach property outside its jurisdiction, and that the Trustee had failed to show probable success on the merits. In connection with the latter contentions, Violet argued that in order to obtain a prejudgment attachment under N.Y.Civ.Prac.Law § 6212 (McKinney 1980), made applicable to the case by Fed.R.Civ.P. 64, the Trustee was required to prove “by affidavit and ... other written evidence ... that it is probable that [he] will succeed on the merits,” N.Y.Civ.Prac.Law § 6212(a). She argued that the Trustee’s affidavits contained (1) no evidence that Violet was an officer of the Drexler Companies and hence had not shown a likelihood of success on his claims of waste, mismanagement, conversion, and breach of fiduciary duty; and (2) no evidence that the Drexler Companies were insolvent at the time any payments were made to Violet and hence had not established a likelihood of success on his claims of fraudulent conveyance and fraudulent transfer. The evidence of those facts had not been presented to the court in affidavits or in documents attached to affidavits.
By Opinion and Order dated July 17, 1984, 42 B.R. 355 (S.D.N.Y.1984) (“July 17 Order”), the district court denied the motion for an attachment on the technical ground that the Trustee had failed to show probable success on the merits “on the face of [his] affidavit and exhibits attached thereto,” id. at 357, but it granted the other relief requested by the Trustee by continuing the June 7, June 8, and June 20 Orders in effect. With respect to the motions for injunctive relief, the court found, inter alia, that the Trustee had shown a likelihood of success on the merits of his claims of waste, conversion, and mismanagement, since the record showed that Violet had received payments from the Drexler Companies totaling more than $600,000 in the period 1977-1980 despite the fact that, according to her testi *411 mony, her only involvement with those companies was as a part-time employee supervising the clerical help. It also found that the Drexler Companies had outstanding against them judgments for hundreds of thousands of dollars, at least one of which was based on claims that accrued while Violet was receiving her substantial part-time pay.
The district court further found that Violet had engaged in “numerous efforts to secrete [her] assets” so as to avoid any eventual judgment and had shown “blatant disregard for court orders and the obligation to testify truthfully under oath.” 42 B.R. at 358. It concluded that although the relief sought by the Trustee in the proceeding was money damages, preliminary injunctive relief was “essential to prevent a potential judgment from becoming ineffectual”, id. at 358, and “to protect the interests of the creditors of the [Drexler Companies].” Id. at 359. The court ruled that it had authority to issue the mandatory injunctive order because, having personal jurisdiction over Violet, it had jurisdiction to compel her to perform acts with respect to her property located outside the court’s jurisdiction.
Accordingly, the July 17 Order denied Violet’s motion to vacate or modify the June 7, June 8, and June 20 Orders and ordered that the relief granted in those orders remain in effect. .The July 17 Order was later modified to exempt Violet’s current salary and her pension fund on condition that she submit periodic reports to the court with respect to her income and bank accounts.
Violet timely appealed from the July 17 Order as so modified. On appeal, she contends principally that the district court lacked statutory authority to grant the mandatory injunction ordering turnover, and that, in any event, it applied improper standards in entering that order. The Trustee opposes the appeal on its merits but also has moved to dismiss on the grounds (1) that the July 17 Order is not appealable, and (2) that we should exercise our discretion to dismiss the appeal because Violet has refused to comply with the order appealed from. For the reasons below, we decline to dismiss the appeal and we affirm the July 17 Order.
II. Appealability
The Trustee contends that we lack jurisdiction to hear Violet’s appeal from the July 17 Order, because that order is neither a “final decision” appealable under 28 U.S.C. § 1291, nor an interlocutory order that is appealable under 28 U.S.C. § 1292(a)(1). Alternatively, the Trustee argues that even if we have jurisdiction to hear the appeal, we should exercise our discretion to dismiss it because Violet has refused to comply with the July 17 Order. We find neither argument persuasive.
A. Jurisdiction
Section 1292(a)(1) of 28 U.S.C. grants the courts of appeals jurisdiction to review “[interlocutory orders of ... district courts ... granting, continuing, modifying, refusing or dissolving injunctions, or. refusing to dissolve or modify injunctions.” Adopted by Congress “to permit litigants to effectually challenge interlocutory orders of serious, perhaps irreparable, consequence,” Baltimore Contractors, Inc. v. Bodinger, 348 U.S. 176, 181, 75 S.Ct. 249, 252, 99 L.Ed. 233 (1955), and because “rigid application of [the final-judgment] principle was found to create undue hardship in some cases,” Carson v. American Brands, Inc., 450 U.S. 79, 83, 101 S.Ct. 993, 996, 67 L.Ed.2d 59 (1981), this statutory exception to the final-judgment rule has generally been narrowly construed, see id. at 84-86, 101 S.Ct. at 996-997; Gardner v. Westinghouse Broadcasting Co., 437 U.S. 478, 480-82, 98 S.Ct. 2451, 2453-54, 57 L.Ed.2d 364 (1978); Switzerland Cheese Association, Inc. v. E. Horne’s Market, Inc., 385 U.S. 23, 24, 87 S.Ct. 193, 194, 17 L.Ed.2d 23 (1966); United States v. Wade, 713 F.2d 49, 52 (3d Cir.1983); Williams v. Wallace Silversmiths, Inc., 566 F.2d 364, 365 (2d Cir.1977) (per curiam).
Accordingly, we have held that review under “§ 1292(a) (1) is limited ‘to injunctions which give or aid in giving some or all *412 of the substantive relief sought by a complaint,’ ” Miller v. United States, 403 F.2d 77, 78 (2d Cir.1968) (Friendly, J.) (quoting International Products Corp. v. Koons, 325 F.2d 403, 406 (2d Cir.1963) (Friendly, J.)) and the Supreme Court has held that “[o]rders that in no way touch on the merits of the claim ... are not ... ‘interlocutory’ within the meaning of § 1292(a)(1),” Switzerland Cheese Association, Inc. v. E. Horne’s Market, Inc., 385 U.S. at 25, 87 S.Ct. at 195. The further teaching of the Supreme Court has limited that section to appeals from interlocutory orders that the appealing parties can show “might cause them irreparable consequences if not immediately reviewed.” Carson v. American Brands, Inc., 450 U.S. at 85, 101 S.Ct. at 997.
Within this framework, we have held that a district court’s order requiring a litigant to bring certain securities into the state in order that they might be subjected to attachment was an injunction within the meaning of § 1292(a)(1) and hence was appealable. Inter-Regional Financial Group, Inc. v. Hashemi, 562 F.2d 152, 154 (2d Cir.1977), cert. denied, 434 U.S. 1046, 98 S.Ct. 892, 54 L.Ed.2d 798 (1978). We observed in Hashemi that, although orders granting or denying attachments are not generally reviewable prior to the entry of a final judgment, the order appealed from there required the defendant to do more than simply surrender property for an attachment; it required him to bring the securities from their locations in other states and other countries into the State of Connecticut so that they might be attached. We construed this order as an injunction that was appealable under § 1292(a)(1). See also United States v. Ross, 302 F.2d 831 (2d Cir.1962) (similar appeal entertained without discussion of appealability).
We see no sound basis for distinguishing the July 17 Order from the order held appealable in Hashemi. The July 17 Order continued in effect the June 7, June 8, and June 20 Orders, which prohibited Violet from transferring or disposing of any of her property, wherever located, and which ordered her to deliver all of her deliverable property, wherever located, to her attorney in New York as escrow agent.
Nor do we see any basis for viewing as unsatisfied either the requirement that lack of immediate review may have irreparable consequences or the requirement that the order appealed from have a relationship to the merits or to the relief sought in the action. By its terms, the July 17 Order deprives Violet of both the use and the possession of a substantial portion of her property during the pendency of the Trustee’s action. Such a deprivation is surely a “serious, perhaps irreparable, consequence.” Divested of the ability to use any assets but her current salary and pension, Violet will be unable to conduct the affairs of her life without substantial constraint. Nor could the consequences of this deprivation be remedied effectively by review after a final decision in the underlying action, since opportunities to use and enjoy the property during the pendency of the action would not be recapturable. Thus, we view the July 17 Order as one having serious and irreparable consequences.
Finally, it is plain that the July 17 Order was expressly designed to aid in giving the substantive relief sought in the complaint. The Trustee’s complaint seeks a money judgment from Violet. The avowed purpose of the July 17 Order was “to prevent a potential judgment from becoming ineffectual,” 42 B.R. at 358, and its effect is to collect and preserve a pool of assets from which such a judgment can be satisfied. Thus, the July 17 Order is within the category of injunctive orders we described as appealable in Miller v. United States. We find little merit in the Trustee’s contention that the July 17 Order is not appealable under § 1292(a) because “[t]he mandatory injunction has no affect [sic ] whatever on the upcoming trial on the merits; it merely offers security for any judgment which may ultimately be rendered.” The required relationship to the merits is satisfied when the preliminary injunction is designed to ensure the availability of the substantive relief sought in the suit. And if we were *413 to agree with the Trustee that there were no such relationship, we might well be compelled to view the July 17 Order as a collateral order of the type that is appealable under § 1291 pursuant to the Cohen doctrine. See Cohen v. Beneficial Industrial Loan Corp., 337 U.S. 541, 545-47, 69 S.Ct. 1221, 1225-26, 93 L.Ed. 1528 (1949) (order requiring plaintiff to post security for costs of suit held final and appealable under § 1291).
B. The Request for a Discretionary Dismissal
The Trustee urges that if we find we have jurisdiction of the appeal, we nonetheless must dismiss it, or should dismiss it in the exercise of our discretion, because Violet has neither obtained a stay of the July 17 Order nor complied with it and is thus in contempt of the district court. In support of this contention, the Trustee relies principally on two lines of cases, neither of which we find persuasive in the present circumstances.
The first line of cases, Maness v. Meyers, 419 U.S. 449, 95 S.Ct. 584, 42 L.Ed.2d 574 (1975); Howat v. Kansas, 258 U.S. 181, 42 S.Ct. 277, 66 L.Ed. 550 (1922); and SEC v. Charles Plohn & Co., 433 F.2d 376, 379 (2d Cir.1970), stands only for the proposition that an order issued by a court must be obeyed by one subject to it and that if he disobeys he may be punished for contempt even if the order is subsequently ruled to have been erroneous. See also, e.g., Walker v. City of Birmingham, 388 U.S. 307, 87 S.Ct. 1824, 18 L.Ed.2d 1210 (1967); United States v. United Mine Workers of America, 330 U.S. 258, 289-95, 67 S.Ct. 677, 693-96, 91 L.Ed. 884 (1947). These cases do not address, and do not imply an answer to, the question of whether a litigant who does not comply is barred from appealing.
The second line of cases, Molinaro v. New Jersey, 396 U.S. 365, 90 S.Ct. 498, 24 L.Ed.2d 586 (1970) (per curiam); Eisler v. United States, 338 U.S. 189, 69 S.Ct. 1453, 93 L.Ed. 1897 (1949) (per curiam); Allen v. Georgia, 166 U.S. 138, 17 S.Ct. 525, 41 L.Ed. 949 (1897); United States v. Sperling, 506 F.2d 1323, 1345 n. 33 (2d Cir. 1974), cert. denied, 420 U.S. 962, 95 S.Ct. 1351, 43 L.Ed.2d 439 (1975), and cert. denied, 421 U.S. 949, 95 S.Ct. 1682, 44 L.Ed.2d 103 (1975); and Stern v. United States, 249 F.2d 720 (2d Cir.1957) (per curiam), cert. denied, 357 U.S. 919, 78 S.Ct. 1360, 2 L.Ed.2d 1364 (1958), though color-ably relevant, is readily distinguishable. In Molinaro, Eisler, Allen, and Sperling, the Courts refused to hear appeals from criminal convictions brought by convicted appellants who were then fugitives, on the rationale that, since the fugitives might never be captured, their challenges to their convictions might very well be moot as a practical matter. See Eisler, 338 U.S. at 190, 69 S.Ct. at 1454; accord Smith v. United States, 94 U.S. 97, 4 Otto 97, 24 L.Ed. 32 (1876). In Stem, we dismissed an appeal from a judgment of criminal contempt imposing a fine of $25,000 because, before the fine could be collected, appellants had liquidated all of their property and moved it and themselves to Czechoslovakia. We noted that the appellants’ actions
show[ed] a determined effort to deprive the court of power to execute its mandate if the judgment on appeal should be affirmed. Here we have an undisputed, studied, and successful attempt to render the court powerless to enforce its decree.
249 F.2d at 722. Since the Court had been rendered powerless to enforce its decree, the appeal was moot and we dismissed it.[1]
In the present case, while Violet has not complied with the district court’s order, *414 there is no indication that she has attempted to flee the jurisdiction of this Court or of the district court. Therefore, unlike the appellants in the cases just discussed, Violet remains subject to the exercise of the jurisdiction of the district court and of this Court through the sanction of fine or imprisonment for contempt for noncompliance with the district court’s order. Indeed, subsequent to the filing of this appeal, the Trustee successfully moved the district court to cite Violet for civil contempt, and we were informed at oral argument that Violet had been imprisoned to coerce her compliance with, inter alia, the July 17 Order.
Whether or not the district court’s contempt citation ultimately succeeds in coercing Violet’s compliance, we decline in this case, since the contempt process was available, to fashion new enforcement machinery by denying Violet appellate review of the July 17 Order until she has complied with it.
III. The Merits op the Appeal
Violet challenges the July 17 Order on several grounds. She contends principally that the district court had no power to order her to deliver to the escrow agent property located outside the court’s territorial jurisdiction and that the court applied improper standards in granting the injunctions. We are unpersuaded.
A. Power to Issue the July 17 Order
Violet’s contention that the district court lacked the power to compel her to deliver her property from outside the court’s territorial jurisdiction must be rejected because the court had personal jurisdiction over Violet herself, see United States v. First National City Bank, 379 U.S. 378, 85 S.Ct. 528, 13 L.Ed.2d 365 (1965); United States v. Ross, 302 F.2d 831; Inter-Regional Financial Group, Inc. v. Hashemi, 562 F.2d 152; Fleming v. Gray Manufacturing Co., 352 F.Supp. 724, 726 (D.Conn.1973), and, as a court sitting in bankruptcy, the district court had the power to issue any order necessary to carry out the provisions of the Bankruptcy Code, 11 U.S.C. § 105(a) (1982).
In United States v. Ross, the government sought to subject Ross's property to the payment of jeopardy assessments for unpaid income taxes. The district court found that Ross was engaged in transferring his assets from the United States in an effort to escape the enforcement of any tax liabilities eventually established against him, and it therefore appointed a receiver and ordered Ross to transfer to the receiver his shares in certain wholly-owned Bahamian corporations. On appeal, Ross contended that the district court had no authority to affect his stock located outside of the United States. We rejected this argument on the ground that “[t]he court had personal jurisdiction over Ross____ Personal jurisdiction gave the court power to order Ross to transfer property whether that property was within or without the limits of the court’s territorial jurisdiction.” 302 F.2d at 834. In Inter-Regional Financial Group, Inc. v. Hashemi, a contract action, we similarly affirmed an interlocutory injunction ordering the defendant, over whom the district court had personal jurisdiction, to deliver securities located outside the district into court to be subjected to a prejudgment attachment. 562 F.2d at 154. In United States v. First National City Bank, which, like Ross, involved an injunction to prevent expatriation of assets to avoid payment of a tax liability, the Supreme Court held that the district court, having personal jurisdiction over a bank in which the taxpayer had accounts, had power to order the bank not to release or transfer those accounts even though the accounts were located outside the United States. 379 U.S. at 384, 85 S.Ct. at 531.
We see no merit in Violet’s attempt to distinguish Ross and First National City Bank on the ground that those cases rested on the authority granted to district courts in tax cases by 26 U.S.C. § 7402(a) (1982) to grant injunctions “necessary or appropriate for the enforcement of the internal revenue laws.” The Bankruptcy Code grants a court sitting in bankruptcy the similar power to “issue any order, pro *415 cess, or judgment that is necessary or appropriate to carry out the provisions of this title.” 11 U.S.C. § 105(a) (1982). The present case arises out of the bankruptcy proceedings of the Drexler Companies; the district court in this case was sitting as a bankruptcy court; and its injunctive orders were designed “to protect the interests of the creditors of the debtor corporations.” 42 B.R. at 359. Section 105(a) provided the court with broad power to achieve this goal.
There is no merit in Violet’s argument that § 105(a) does not apply to the present case on the ground that Fed.R.Bankr.P. 7065 provides that “Rule 65 F.R.Civ.P. applies in adversary proceedings____” Rule 65 governs such matters as procedure, notice, time periods, and the proper form and service of injunctive orders. But, like the other Federal Rules of Civil Procedure, see, e.g., Snyder v. Harris, 394 U.S. 332, 337-38, 89 S.Ct. 1053, 1057, 22 L.Ed.2d 319 (1969) (Rule 23); Sibbach v. Wilson & Co., 312 U.S. 1, 10, 61 S.Ct. 422, 424, 85 L.Ed. 479 (1941) (Rules 35 and 37), Rule 65 may not be construed as a limitation on the jurisdiction or power of the district court to issue a particular kind of injunction. Fed. R.Civ.P. 82.
In the present case, there is no question that the district court had personal jurisdiction over Violet. Accordingly, the district court had the power to order Violet to transfer her property to the escrow agent regardless of where that property was located.
B. The Standard for Issuance of- the July 17 Order
Violet argues that in issuing the July 17 Order, the district court applied the wrong standard in two respects. First, she contends that the court applied state law standards found in N.Y.Civ.Prac.Law § 6301 (McKinney 1980) rather than the federal standard applicable to the granting of preliminary injunctions. Second, she contends that the injunctions could not have been granted under the federal standard principally because there was no showing of a likelihood of irreparable harm in the absence of injunctive relief. While there may be some merit to Violet’s contention that the district court relied, at least in part, on the state law provision, and while it is arguable that such reliance may have been improper, the district court committed no reversible error since its findings and conclusions amply satisfied both the state test and this Circuit’s test for the granting of preliminary injunctions.[2]
In this Circuit, is is well established that, to obtain a preliminary injunction, an applicant must show that he
is likely to suffer irreparable injury if [such] relief is denied [and] there is either (1) a likelihood of success on the merits or (2) sufficiently serious questions going to the merits to make them a fair ground for litigation, with a balance of hardships tipping decidedly in the [applicant’s] favor.
*416 Proctor & Gamble Co. v. ChesebroughPond’s Inc., 747 F.2d 114, 118 (2d Cir.1984); accord, e.g., Coca-Cola Co. v. Tropicana Products, Inc., 690 F.2d 312, 314-15 (2d Cir.1982); KMW International v. Chase Manhattan Bank, N.A., 606 F.2d 10, 14 (2d Cir.1979); Jackson Dairy, Inc. v. H.P. Hood & Sons, Inc., 596 F.2d 70, 72 (2d Cir.1979) (per curiam). Violet contends that the Trustee failed to meet this test principally because, since the underlying suit seeks only money damages, the Trustee could not establish irreparable injury. As a general rule, of course, a party may not obtain injunctive relief where it is claiming a loss that can be adequately remedied by an award of money damages. See, e.g., Sperry International Trade, Inc. v. Government of Israel, 670 F.2d 8, 12 (2d Cir.1982); KMW International v. Chase Manhattan Bank, N.A., 606 F.2d at 14; Jackson Dairy, Inc. v. H.P. Hood & Sons, Inc., 596 F.2d at 72; SCM Corp. v. Xerox Corp., 507 F.2d 358, 363 (2d Cir.1974). Yet, even where the ultimate relief sought is money damages, federal courts have found preliminary injunctions appropriate where it has been shown that the defendant “intended to frustrate any judgment on the merits” by “transfer[ring its assets] out of the jurisdiction.” Productos Carnic, S.A. v. Central American Beef & Seafood Trading Co., 621 F.2d 683, 686 (5th Cir.1980); see International Controls Corp. v. Vesco, 490 F.2d 1334, 1347 (2d Cir.), cert. denied, 417 U.S. 932, 94 S.Ct. 2644, 41 L.Ed.2d 236 (1974); United States v. Ross. See also Itek Corp. v. First National Bank, 730 F.2d 19, 22-23 (1st Cir. 1984) (upholding injunction against American bank’s making letter-of-credit payments to Iranian entity on the ground that, in light of the rupture of relations between the United States and Iran, the theoretically adequate money damages claimed by the plaintiff were unlikely ever to be collectible as a practical matter); accord Rockwell International Systems, Inc. v. Citibank, N.A., 719 F.2d 583, 586-88 (2d Cir.1983); Harris Corp. v. National Iranian Radio & Television, 691 F.2d 1344, 1356-57 (11th Cir.1982).
We find no abuse of the district court’s discretion in its conclusion that this is an appropriate case for the issuance of injunctive relief to prevent Violet from making uncollectible any judgment the Trustee may eventually obtain against her. The court found that Violet had engaged in “numerous” 42 B.R. at 359, and “substantial efforts to hide and secrete assets.” Id. at 358. This finding was amply supported by the record, which included evidence of Violet’s bond purchases and Swiss bank accounts, along with her repeated sworn testimony that she had no such assets. Accordingly, the court’s conclusion that without injunctive relief an eventual money judgment was likely to be “ineffectual” should not be disturbed. Id. at 360.
We also reject Violet’s contention that the injunctions were improperly granted because the Trustee failed to show likelihood of success on the merits of his claims. To support this contention, Violet cites one statement by the court and one by the Trustee, both of which she has taken out of context. Our review of the record reveals that, to the extent that the Trustee or the court stated that probable success on the merits had not been shown, they were referring to the technical requirement of N.Y.Civ.Prac.Law § 6212 that there be proof “by affidavit” of facts necessary for .an attachment. The Trustee having failed to meet the technical requirements imposed by that section, the application for an attachment was denied. The court expressly observed that the technical requirements of § 6212 did not extend to the Trustee’s requests for other relief, and found that “[t]he requirement that the Court find a likelihood of success on the merits, established by case law, is also satisfied.” 42 B.R. at 358. Given the evidence introduced by the Trustee which supported the district court’s findings that Violet had been an officer of the Drexler Companies, had done very little work for them, and had received more than $600,000 from them in a four-year period, we are unable to conclude that the district court erred in ruling that probable success had been established as to the merits of *417 the Trustee’s claims for waste, mismanagement, conversion, and breach of fiduciary duty.
C. Other Contentions
We have considered all of Violet’s other contentions and find them without merit. The district court’s opinion accompanying its July 17 Order adequately sets forth express findings of fact and conclusions of law which constituted the ground of its decision, as required by Fed.R.Civ.P. 52(a). Nor do we find merit in the contention that the July 17 Order is not sufficiently precise in describing the acts required and the acts restrained to satisfy the requirements of Fed.R.Civ.P. 65(d). That order continued in effect the court’s June 7, June 8, and June 20 Orders, which explicitly prohibited Violet from transferring or disposing of any interest she may have had in brokerage accounts, in securities held directly by her, or in any of her property; the June 20 Order ordered her to turn over to the escrow agent “all [of her] property capable of delivery.” While these provisions are broad, they are not vague. Even were the court generally required to itemize the property subject to such injunctive provisions, we would not fault it in this case for using all-encompassing terms, since Violet’s apparent lack of truthfulness in her sworn testimony has made it difficult to identify her assets.
Conclusion
For the foregoing reasons, the July 17 Order of the district court is affirmed.

. Nor does National Union of Maritime Cooks & Stewards v. Arnold, 348 U.S. 37, 75 S.Ct. 92, 99 L.Ed. 46 (1954), also relied on by the Trustee, advance his position. That case held merely that a state court’s dismissal of an appeal from a money judgment because of the appellant’s failure to comply with the trial court's order to deposit certain property with the court to ensure satisfaction of the judgment did not violate the Due Process or Equal Protection Clauses of the Fourteenth Amendment. The holding that such a practice was not constitutionally forbidden hardly supports the Trustee’s argument that the practice has been adopted by the Supreme Court or must be adopted by this Court in cases such as this.

. Fed.R.Civ.P. 64 provides that
[a]t the commencement of and during the course of an action, all remedies providing for seizure of person or property for the purpose of securing satisfaction of the judgment ultimately to be entered in the action are available under the circumstances and in the manner provided by the law of the state in which the district court is held____ The remedies thus available include arrest, attachment, garnishment, replevin, sequestration, and other corresponding or equivalent remedies, however designated____
If the mandatory injunction here is a "remed[y] providing for seizure of person or property for the purpose of securing satisfaction of the judgment ultimately to be entered in the action," the district court’s application of the New York standard was entirely proper and perhaps even required. See, e.g., Lechman v. Ashkenazy Enterprises, Inc., 712 F.2d 327 (7th Cir.1983) (per curiam); Inter-Regional Financial Group, Inc. v. Hashemi, 562 F.2d at 154-55; Glaser v. North American Uranium & Oil Corp., 222 F.2d 552 (2d Cir.1955); Bernstein v. Van Heyghen Freres Societe Anonyme, 163 F.2d 246 (2d Cir.), cert. denied, 332 U.S. 772, 68 S.Ct. 88, 92 L.Ed. 357 (1947). If, however, the injunction here is not such a remedy, the district court should have applied the federal standard in deciding whether or not to grant the preliminary injunction. Violet does not contend that the state standard, if applicable, was not met.