The **MIAMI CENTER LIQUIDATING TRUST, for itself and for the Use and Benefit of City National Bank of Miami, a national banking association as Trustee under Trust Agreement dated October 10, 1985 and known as Trust # 5008793, Plaintiff,**

v.

**DADE COUNTY, FLORIDA, Robbins, Joel in his capacity as Acting Property Appraiser of Dade County, Ganz, Fred, in his capacity and as Tax Collector of Dade County, Miller, Randall, in his capacity as Executive Director of the Florida Department of Revenue, Smith, Jim, Attorney General of the State of Florida, Butterworth, Robert, as successor Attorney General, Defendants.**

**No. 86–2608–CIV.**

United States District Court,
S.D. Florida.

May 21, 1987.

William E. Steffes, Baton Rouge, La., for Executive Office Centers, Inc.

Ralph S. Hubbard, New Orleans, La., for Westinghouse Credit Corp. and Latter & Blum, Inc.

Monica T. Surprenant, Metairie, La., for Pelican Homestead & Sav. Ass'n.

Irving M. Wolff, Harry D. Lewis, Holland & Knight, Miami, Fla., for plaintiff.

Robert A. Butterworth, Atty. Gen., Linda Lettera, Asst. Atty. Gen., Tallahassee, Fla., for defendants Smith & Butterworth.

Robert A. Ginsburg, Dade Co. Atty., Daniel A. Weiss and Thomas W. Logue, Asst. Co. Attys., Miami, Fla., for defendants Robbins, Ganz & Miller.

## ORDER DISMISSING COMPLAINT IN ABSENCE OF MANDATORY JURISDICTION

KEHOE, District Judge.

THIS CAUSE is before the Court upon the Plaintiff's Application for a Temporary Restraining Order pursuant to a Complaint for Declaratory Judgment and Permanent Injunction. At the hearing on the Application, the primary question considered by the Court was whether its *mandatory* jurisdiction, rather than its *discretionary* jurisdiction, had been invoked. The Court's concern arose from the fact that the file reflected that the subject matter of the Complaint and Application was an integral part of duly-instituted bankruptcy proceedings before the Honorable Thomas C. Britton in the United States Bankruptcy Court for the Southern District of Florida. Because the Bankruptcy Court is this Court's adjunct in bankruptcy matters and because the nature of these proceedings appeared to be the very sort Congress intended for the Bankruptcy Court's jurisdiction, the Court advised the parties that as a basic policy consideration and out of deference to the Bankruptcy Court's jurisdictional integrity, its expertise and its familiarity with the present issues, jursidiction in this case would be assumed only if it was shown to be *mandatory.*

The parties, having prepared and timely submitted memoranda on the mandatory jurisdiction question, and the Court having carefully reviewed the memoranda and having otherwise independently apprised itself in the premises, it is

ORDERED AND ADJUDGED that no clear showing has been made to invoke this Court's mandatory jurisdiction to entertain the present Complaint for Declaratory Judgment and Permanent Injunction and, accordingly, the Complaint is hereby DISMISSED.

In entering this Order, the Court has relied on the following:

## THE CURRENT PROCEEDINGS [1]

1. This case arises out of bankruptcy proceedings culminating in a 1985 Bankruptcy Plan confirmed by the United States Bankruptcy Court for the Southern District of Florida, which created the Plaintiff Miami Center Liquidating Trust. The Bankruptcy Plan itself centers around highly improved real estate known as the Miami Center Property, prominently located in the downtown section of the City of Miami (Dade County, Florida).

2. The primary Defendant is Dade County, Florida, a political subdivision under the Florida Constitution that operates pursuant to a home rule charter. Under that charter, the Defendant County has the power to "levy and collect such taxes as may be authorized by general law and no other taxes." This includes the levying and collection of ad valorem real property taxes. (For the tax years 1983 through 1985, the ad valorem real property taxes for the bankrupt property came under the control of the Bankruptcy Court.)

3. In connection with such taxes for the tax years 1979 through 1985, the Plaintiff alleges that the Defendant County failed in its duty to perform a just and uniform real property valuation, resulting in an overvaluation of the Miami Center Property, in violation of the Plaintiff's constitutional due process rights.

4. The legal disputes over these long-standing property tax disagreements prompted court proceedings currently pending in the Circuit Court for the Eleventh Judicial Circuit in and for Dade County, Florida.

5. In the present Complaint, the Plaintiff argues that it is entitled to real property tax refunds from the Defendant County and that such refunds would increase the assets available for creditors under the Bankruptcy Plan.

6. Thus, the Plaintiff is now before this Court, during the latter stages of the bankruptcy proceedings, alleging that:

Th[e District] Court has both pendent and ancillary jurisdiction to enforce the injunction of 11 U.S.C. § 524 and to determine the validity, extent and amount of the claims of [the Defendant County] for all tax years at issue, and is the *only* forum which can offer Plaintiff a plain, speedy and efficient remedy, and enforce its rights pursuant to 11 U.S.C. § 524. [emphasis added]

7. In addition to Dade County, Florida, the Complaint names as Defendants: (a) Dade County's Acting Property Appraiser and (b) its Tax Collector, (c) the Executive Director of Florida's Department of Revenue and (d) the former and (e) current Florida Attorneys General.

### BANKRUPTCY HEARING OF DECEMBER 29, 1986

8. During the December 29, 1986, Bankruptcy Court hearing in this matter, Judge Thomas C. Britton first learned of the law suit filed in this Court. At that time, Judge Britton expressed his "... understanding that the issue of the amount owed on the [County's] tax, not necessarily the amount to be paid from the estate ... are two separate questions—there may well not be enough money after the payment of all administrative expenses to satisfy this lien, ... but the amount of the tax, whether the state statute is constitutional or not would be a part of that process, [and] ought to be decided in the state court."

9. At that hearing, the Plaintiff's counsel advised the Bankruptcy Court that the basis for the present District Court action was constitutional and related to "the application of the Bankruptcy Code ...," that "Dade County never filed a claim in these proceedings ..." and "never submitted itself to the jurisdiction of [the Bankruptcy] Court, ... therefore, ... [the Plaintiff needed] a determination of whether or not [the County is] a creditor entitled to any priority, [which] is not a state court issue."

10. Throughout this portion of the hearing, Judge Britton maintained that his jurisdiction had not terminated, that he contin-

---

**1.** As no jurisdiction is being assumed in this case, the Court shall, insofar as possible, refrain from addressing the merits of the bankruptcy proceedings.

ued to have control over all the issues, that the Plaintiff could have raised every issue in [the state court] proceeding ..., "that the Plaintiff was "... just making an issue to get it before the District Court and away from the state court ..." and that the Plaintiff was "playing games to the disadvantage of another litigant."

11. In connection with the status of Dade County's claim, Judge Britton specifically pointed out:

\* \* \* \* \* \*

This is the first moment since the beginning of this lawsuit that it has been indicated to me in any respect that the status of the county tax claim as a claimant against this estate is not recognized because no claim was filed. It is the first time it has been hinted. The debtor recognized it constantly and you have recognized it constantly up until now, you have set aside a reserve for it, and now you are saying that this whole matter must be decided in a court that cannot even hear it earlier than a year from now because no claim was filed. I am appalled.

12. With reference to the termination of the Bankruptcy Court's jurisdiction, Judge Britton advised the parties:

\* \* \* \* \* \*

I am very anxious to get the case closed and disposed of and cut off the administrative expenses that accompany a bankruptcy case, but I will not do it if, by doing so, I leave problems for the very court that I am charged with the responsibility of serving, the District Court.

13. Judge Britton thereupon summed up his views:

\* \* \* \* \* \*

Here are issues that a bankruptcy court is supposed to resolve and you are telling me that on the eve of closing the case I am permitting you to go over there [to the District Court] to dump these issues in front of them, issues which I have been trying to get resolved over here.

## POLICY CONSIDERATIONS AND LEGAL CONCLUSIONS

■ 14. In the absence of a legal mandate or a specific precedence for assuming jurisdiction of the particular questions here at issue, this Court should not exercise its discretionary jurisidiction to "reach down," as it were, and remove these proceedings from the Bankruptcy Court. Cf. the Legislative History of the Bankruptcy Amendments and Federal Judgeship Act of 1984, at 1984 U.S.Code Cong. and Adm.News 576.

■ 15. The Bankruptcy Court, although vested with a considerable latitude of powers and jurisdiction, is not vested with unlimited powers and jurisdiction in all circumstances. Statutory and case law has made this clear. See Title 28, United States Code, § 157(a), and the progeny of *Northern Pipeline v. Marathon Pipeline Co.*, 458 U.S. 50, 102 S.Ct. 2858, 73 L.Ed.2d 598 (1982).

■ 16. The District Court does, of course, have the responsibility to exercise its discretion to take jurisdiction of pending bankruptcy cases where there is a clear legal duty to do so, but that responsibility does not, by necessity, extend to every case where there is some arguable question of whether the District Court is the better or more convenient forum for resolution of selected issues.

17. Uppermost, within the confines of its jurisdiction, the District Court should be ever wary, in pending bankruptcy cases, of taking action that could undermine—or appear to undermine—the function and integrity of the Bankruptcy Court.

18. In the present case, the Plaintiff correctly argues that although most "core proceedings" defined in Title 28, United States Code, Section 157(b), may be properly delegated by the District Court to a Bankruptcy Court judge, such delegation is limited and "... serious questions remain as to the limits of the power the district court can delegate." The cases cited by the Plaintiff as "comparative" support for this proposition, although carefully chosen, where applicable, serve at best, for the

purposes of the Plaintiff, only to demonstrate that in the given analogous circumstances, discretion still lies in the District Court, even in the gray areas of the law. See *Committee of Unsecured Creditors of FS Communications Corp. v. Hyatt Greenville Corp.*, 760 F.2d 1194 (11th Cir. 1985); *Republic Health Corporation v. Lifemark Hospitals of Florida, Inc.*, 755 F.2d 1453 (11th Cir.1985); *Barnette v. Evans*, 673 F.2d 1250 (11th Cir.1982); *Green v. Drexler*, 760 F.2d 406 (2nd Cir.1985); *Uranga v. Geib*, 755 F.2d 421 (5th Cir. 1985); and *Davidson v. Insurance Company of North America*, 721 F.2d 224 (8th Cir.1983).

19. Thus, the Court concludes:

a. No legal authority mandates the District Court to assume jurisdiction under the circumstances present herein.

b. Legal authority in analogous circumstances provide that jurisdiction is within the discretion of the District Court.

c. The present issues are properly being considered for resolution by, and have not been shown to overstep the jurisdiction of, the Bankruptcy Court.

d. Based on the facts presented and on the Bankruptcy Court's long-standing familiarity with these proceedings and its expertise in such matters, the Bankruptcy Court is presently the appropriate forum for all issues herein.