**Rusbeiro MESSA**

v.

**ALLSTATE INS. CO., its President and adjusters;**

**Frankford Quaker Grocery, its President and supervisors; Commonwealth of Pennsylvania, Dept. of Labor and Industry, Secretary Thomas Foley, Referees I. Stander, W. Stevenson, Nancy Goodwin; Sec'y Workmen's Compensation Appeal Board Norman Haigh and Commissioners, in their official capacities; Post & Schell, P.C., and Stephen Potako, Esq., Marcie Stander, Esq.; Steiner, Segal and Muller, James Muller, Esq.**

**Civ. A. No. 95–3119.**

United States District Court,
E.D. Pennsylvania.

Aug. 11, 1995.

Rusbeiro Messa, pro se.

## MEMORANDUM

LOUIS H. POLLAK, District Judge.

■ Plaintiff, Rusbeiro Messa, has filed a *pro se* complaint seeking damages under 42 U.S.C. §§ 1983 and 1985(2), Title VII, the Americans with Disabilities Act, and various state common-law causes of action. Messa has filed a motion to proceed *in forma pauperis*. Because Messa asserts that his debts substantially exceed his assets, and that his income is very small, and because there is no reason not to believe these claims, his motion to proceed *in forma pauperis* is granted.

However, the statute granting courts the power to allow plaintiffs to proceed *in forma pauperis*, 28 U.S.C. § 1915, also states that the court "may dismiss the case if satisfied that the action is frivolous or malicious," 28 U.S.C. § 1915(d), a provision which has been interpreted to mean that the court may dismiss the case if recovery is precluded as a matter of law. *See Roman v. Jeffes*, 904 F.2d 192, 194 (3d Cir.1990) (stating that the class of cases appropriately dismissed as frivolous includes those in which "it is readily apparent that the plaintiff's complaint lacks an arguable basis in law or that the defendants are clearly immune from suit") (quoting *Sultenfuss v. Snow*, 894 F.2d 1277, 1278 (11th Cir.1990)).

■ Messa's complaint, as presently written, does indeed lack an arguable basis in law. Some of his claims rest on the same facts as were at issue in a previous case brought by him before this court, which was dismissed in April 1993 for failure to state a claim upon which relief can be granted, *see Messa v. Foley*, 1993 WL 106519 (E.D.Pa. 1993), 1993 U.S. Dist. LEXIS 4519, *aff'd* 17 F.3d 1430 (3d Cir.1994), *cert. denied*, —— U.S. ——, 114 S.Ct. 2745, 129 L.Ed.2d 864 (1994), *reh'g denied*, —— U.S. ——, 115 S.Ct. 25, 129 L.Ed.2d 924 (1994), and so are barred by *res judicata*. Messa's remaining claims are destined to fail for much the same reasons as those for which his claims were dismissed in the earlier proceeding before this court. As it is certain that these claims will not succeed, they will be dismissed under § 1915(d).

## I. FACTS

Messa's claim involves a complex series of events, including two disabling accidents, one in 1985 and one in 1986; a series of workmen's compensation hearings in 1987, 1988, 1989, 1990, and 1994; and state-court proceedings occurring in 1992 and 1994, as well as the previous proceedings before this court. The defendants Messa names include a group of employees of the state of Pennsylvania involved in workmen's compensation proceedings and policies; Frankford Quaker Grocery, Messa's employer until 1986, and Frankford's workmen's compensation carrier, Allstate Insurance Company, as well as certain of the employees of both firms; Post & Schell, P.C., attorneys for Frankford and Allstate, and several attorneys for that firm; and James Muller, Messa's former attorney, as well as Muller's law firm, Steiner, Segal and Muller. One of these defendants, Allstate, appears from the caption of the complaint to be either the parent firm of Northbrook, the insurer named in Messa's previous action, or a successor firm.

The precise facts which Messa alleges are not entirely clear, and it is not always possible to determine the purpose or outcome of the various hearings and state court proceedings at issue. However, insofar as the facts can be discerned, those alleged as occurring in 1987 and 1988 amount, with one or two exceptions, to those alleged by Messa in his previous action before this court; those alleged as occurring thereafter are new.

I will quote the facts alleged as occurring before 1988 from the memorandum I wrote dismissing Messa's previous action, as those allegations appear to be substantially repeated here:

From the papers, we know that a pretermination hearing was scheduled before Referee Stander for March 13, 1987, but was postponed and apparently never rescheduled. Referee Stander nonetheless apparently granted supersedeas by mail on May 23, 1987.

On August 26, 1987, a full hearing was scheduled before Referee Stander. The purpose of this hearing is unclear. Plaintiff suggests in his papers that both the 1985 and 1986 injuries were discussed, yet plaintiff had not yet filed a claim for his 1986 injuries with the Department of Labor and Industry.

On December 18, 1987 plaintiff had another hearing before Referee Stander. Again, the purpose of this hearing is not clear. Plaintiff states, though, that he began to argue that the Workmen's Compensation Act had been violated. Referee Stander refused to hear argument on that issue and instructed plaintiff to send his evidence by mail.

In January 1988, plaintiff filed his claim with the Department of Labor and Industry for his 1986 injuries. At some point, plaintiff must have received compensation benefits for these injuries, because on June 27, 1988 Referee Wallace Stevenson suspended plaintiff's benefits for his 1986 injuries. At the same hearing, Referee Stevenson reinstated plaintiff's benefits for his 1985 injuries. Referee Stevenson adopted the order proposed by plaintiff's counsel—proposed allegedly without plaintiff's knowledge—and ordered payment of the

withheld compensation retroactive to January 13, 1988, the date of Referee Stander's denial of plaintiff's second motion for reconsideration. Referee Stevenson did not order payment of the compensation withheld during the period between the suspension of benefits and January 13, 1988—an amount totalling $12,096.00. Nonetheless, in March 1992, plaintiff received $12,390 from defendants for benefits owed during the suspension period.

*Messa v. Foley, supra,* at p. 4 n. 4, 1993 WL 106519. Messa adds some factual allegations related to this period. He states that Stephen Potako, Esq., a lawyer who represented Frankford and Allstate, "maliciously covered up the participation in the [1987] termination petition of attorney Marcie Stander, representing Frankford and niece of Referee Stander." Complaint, ¶ 17. Messa also states that, in March 1988, he retained James Muller to represent him in compensation proceedings relating to his 1986 injuries. According to Messa, Muller's partner, Erick Segal, requested that the referee disregard Messa's 1986 injuries, focusing only on his 1985 injuries.

In 1989, Referee Stevenson, at the request of Messa's lawyer, Muller, dismissed two motions (whose precise import is unclear) that Messa had filed related to his workmen's compensation benefits. In 1990, Muller filed a motion, allegedly without Messa's consent, which Referee Stevenson granted; the motion apparently found Messa disabled on the basis of his 1986 injuries, but suspended compensation while compensation for the 1985 injuries was being paid. In 1992, the Commonwealth Court of Pennsylvania dismissed an action filed by Messa appealing certain orders of the Workmen's Compensation Board. A state court also dismissed a civil action filed by Messa against Frankford and Northbrook for fraudulent deprivation of workmen's compensation benefits; Messa appealed this dismissal, unsuccessfully, to the Pennsylvania Supreme Court.

In April 1994, Frankford filed a state civil action against Messa "alleging malicious claims in State and federal courts." Complaint, ¶ 10. Frankford demanded that Messa sign a settlement agreement promising to

file no more claims against Frankford, its agents, or its insurance carrier. Messa's former attorney, Muller, declined to represent him; a judgment against Messa was entered in December 1994.

In August 1994, Frankford's lawyer, Potako, filed a proposed order requesting that Referee Nancy Goodwin suspend Messa's workmen's compensation benefits. Muller had moved to withdraw and hence did not appear; Goodwin, who Messa appears to suggest was a former lawyer for Frankford, apparently suspended Messa's benefits, because "otherwise Messa would not go to examination from doctors contracted by Frankford and Northbrook." Complaint, ¶ 12.

Messa's claims against the various groups of defendants will be considered in sequence.

## II. COMMONWEALTH DEFENDANTS

Plaintiff's complaint makes claims under § 1983 for deprivation of his workmen's compensation benefits without due process of law, denial of his right to counsel, and violation of his right to equal protection, naming a range of Commonwealth defendants. These include the Commonwealth of Pennsylvania; Secretary of the Department of Labor and Industry Thomas Foley; Referees Stander, Stevenson, and Goodwin of the Workmen's Compensation Appeal Board; Norman Haigh, Secretary of the Workmen's Compensation Appeal Board; and unnamed "Commissioners," all in their official capacities. Messa's claims relate to alleged misconduct by Stander, Stevenson and Goodwin during a series of hearings, occurring over the period from 1987 to 1994, on his workmen's compensation claims. Messa requests reinstatement of his disability benefits and an injunction prohibiting suspension of his benefits.

■ Messa cannot sue the Commonwealth of Pennsylvania or its officials under § 1983 because states and their officials are not "persons" for purposes of that statute. *See Will v. Michigan Dept. of State Police,* 491 U.S. 58, 71, 109 S.Ct. 2304, 2312, 105 L.Ed.2d 45 (1989). Messa's claims have a number of other probable legal weaknesses, including *res judicata* and the Eleventh Amendment's bar on suits against states in federal courts, which will not be discussed in detail here.

■ Messa's complaint could also be read to make a claim that the Commonwealth of Pennsylvania has violated Pennsylvania's Workmen's Compensation Act, *see* 77 Pa. Cons.Stat.Ann. § 1 *et seq.* (Supp.1994). However, the federal courts are barred by *Pennhurst State School and Hospital v. Halderman,* 465 U.S. 89, 104 S.Ct. 900, 79 L.Ed.2d 67 (1984), from entertaining suits against states alleging violations of state law. Thus, Messa cannot maintain any of his claims against the Commonwealth defendants he names.

## III. FRANKFORD AND ALLSTATE

Messa's allegations as to Frankford and Allstate are, in essence, that they conspired to defraud him of disability benefits in a series of actions before the Workmen's Compensation Appeal Board in 1987, 1988, 1989, 1990, and 1994, as well as before the state courts. His claims based on their conduct in 1987 and 1988 largely duplicate his claims in his prior complaint, while his claims regarding their conduct thereafter are new. Messa omits to state which of the various causes of action he asserts in his complaint—§ 1983, § 1985(2), Title VII, and the Americans with Disabilities Act—specifically apply to Frankford and Allstate. Thus, the court will consider whether any of them could be the basis of a claim before this court.

■ 1. *§ 1983 Claims.* Messa's previous action named Frankford and Northbrook as defendants; as already noted, it appears from the caption of the complaint that Northbrook is in privity with Allstate. Those aspects of the § 1983 claims that repeat claims Messa made in his previous action are therefore barred as *res judicata. See Federated Dept. Stores v. Moitie,* 452 U.S. 394, 399 n. 3, 101 S.Ct. 2424, 2428 n. 3, 69 L.Ed.2d 103 (1981). Messa's discernible claims against Frankford and Allstate that are not so barred are one alleging fraud and obstruction of justice in a successful malicious prosecution suit filed against Messa by Frankford in state court in 1994, and one challenging further efforts by Frankford before the Workmen's Compensation Board to suspend Messa's disability benefits. Both Frankford and

Allstate are private entities, however; the conduct that Messa alleges did not entail the use of any power delegated to them by the state, and Messa does not allege that Frankford or Allstate conspired with government officials, *see Dennis v. Sparks,* 449 U.S. 24, 101 S.Ct. 183, 66 L.Ed.2d 185 (1980).[1] Such conduct by purely private persons does not satisfy the requirement of § 1983 that the acts complained of be performed under color of law.[2]

Messa also names the "President and adjusters" of Northbrook and the "President and supervisors" of Frankford as defendants. Messa's failure to allege acts taken under color of law also applies to his claims against these persons. Moreover, Messa does not attribute any specific conduct to any of these defendants.

■ 2. *§ 1985(2) Claims.* 42 U.S.C. § 1985(2) provides a cause of action against persons who conspire to obstruct justice. This statute, the text of which is set forth in the margin,[3] contains two general categories of claims. The first category applies to a series of enumerated acts which constitute obstruction of justice, including, for instance, intimidating or injuring witnesses and jurors.

The second category defines actionable conspiracies more broadly, as conspiracies "for the purpose of impeding ... the due course of justice in any State or Territory, with intent to deny to any citizen the equal protection of the laws, or to injure him or his property for lawfully enforcing, or attempting to enforce, the right of any person, or class of persons, to the equal protection of the laws."

Messa makes no allegations of the first type. Some of his claims could be of the second category; these include his claims that Frankford and Allstate presented false evidence in various workmen's compensation and state-court proceedings. However, claims of the second category, unlike claims of the first type, require an allegation of racial or class-based invidiously discriminatory animus. *See Griffin v. Breckenridge,* 403 U.S. 88, 102, 91 S.Ct. 1790, 1798, 29 L.Ed.2d 338 (1971) (construing similar language in § 1985(3) to impose this limitation); *Kush v. Rutledge,* 460 U.S. 719, 725, 103 S.Ct. 1483, 1487, 75 L.Ed.2d 413 (1983) (stating, in construing the enumerated prohibitions of § 1985(2), that the general prohibition of § 1985(2) requires an allegation of racial or class-based invidiously discriminatory ani-

1. Messa does appear to assert that the referee at the 1994 workmen's compensation proceeding had previously been employed by Frankford. He does not, however, claim that the referee conspired with Frankford.

2. § 1983 provides: "Any person who, under color of any statute, ordinance, regulation, custom, or usage, of any State or Territory or the District of Columbia, subjects, or causes to be subjected, any citizen of the United States or other person within the jurisdiction thereof to the deprivation of any rights, privileges, or immunities secured by the Constitution and laws, shall be liable to the party injured in an action at law, suit in equity, or other proper proceeding for redress. For the purposes of this statute, any act of Congress applicable exclusively to the District of Columbia shall be considered to be a statute of the District of Columbia." 42 U.S.C. § 1983.

3. § 1985(2) provides:

If two or more persons in any State or Territory conspire to deter, by force, intimidation, or threat, any party or witness in any court of the United States from attending such court, or from testifying to any matter pending therein, freely, fully, and truthfully, or to injure such party or witness in his person or property on

account of his having so attended or testified, or to influence the verdict, presentment, or indictment of any grand or petit juror in any such court, or to injure such juror in his person or property on account of any verdict, presentment, or indictment lawfully assented to by him, or of his being or having been such juror; or if two or more persons conspire for the purpose of impeding, hindering, obstructing, or defeating, in any manner, the due course of justice in any State or Territory, with intent to deny to any citizen the equal protection of the laws, or to injure him or his property for lawfully enforcing, or attempting to enforce, the right of any person, or class of persons, to the equal protection of the laws ...

§ 1985(3) sets forth the remedy for violations of the foregoing section thus:

... [I]n any case of conspiracy set forth in this section, if one or more persons engaged therein do, or cause to be done, any act in furtherance of the object of such conspiracy, whereby another is injured in his person or property, or deprived of having and exercising any right or privilege of a citizen of the United States, the party so injured or deprived may have an action for the recovery of damages, occasioned by such injury or deprivation, against any one or more of the conspirators.

mus). Although Messa (whose native language is Spanish) makes a general allegation of animus based on his "national origin or race," the only specific facts he cites to support this allegation with respect to Frankford or Allstate are that he was the only Latino employee of Frankford when he was hired in 1977 (and was told at the time by supervisors that he was only hired because he did not look Latino) and that a Frankford doctor told him at a medical examination in 1984 that his injuries were attributable not to workplace injury but to, in Messa's words, "AIDS, very particular in tropical blacks and latin people." Complaint, ¶ 26. Although these allegations could conceivably support a claim of race or class-based animus on the part of some Frankford employees, they do not amount to allegations that Frankford or Allstate's conduct before the Workmen's Compensation Appeal Board or before the courts of Pennsylvania was so motivated. For that reason, this aspect of Messa's complaint will be dismissed.[4]

■ 3. *Title VII and Americans with Disabilities Act Claims.* Private actions under both Title VII and the Americans with Disabilities Act are permitted only if the complainant previously filed a complaint with the Equal Opportunity Employment Commission. *See* 42 U.S.C. § 2000e-5. Because Messa makes no allegation that he did so, he cannot make a claim under these statutes.

## IV. POST & SCHELL, P.C.

Plaintiff also names as defendants Post & Schell, P.C., whom he identifies as lawyers for Frankford and Northbrook, as well as individual attorneys Marcie Stander, Stephen Potako, Michael Schaff and Susan Kelly. (The latter two attorneys are not named in the caption of the complaint, but appear in its body as named defendants.) Plaintiff alleges that Potako and other Post & Schell attorneys acted fraudulently in filing a suit in 1987 to terminate Messa's disability benefits and in his later actions in that suit. Plaintiff also alleges that Potako violated § 1983 and § 1985(2) in his representation of Frankford before the Workmen's Compensation Appeal Board in August 1994.

■ As to Messa's § 1983 claims, there is no indication that Potako, or the other named attorneys, acted "under color of law" in the course of the events described by Messa. Although attorneys are by virtue of their duties clothed with an element of state authority, an attorney merely acting on behalf of private clients does not incur liability under § 1983, absent an allegation of conspiracy with a state official. *See Skolnick v. Martin,* 317 F.2d 855, 857 (7th Cir.1963); *Kovacs v. Goodman,* 383 F.Supp. 507, 509 (E.D.Pa.1974), *aff'd* 515 F.2d 507 (3d Cir. 1975).[5]

■ Messa's § 1985(2) claims against the named defendants amount to claims that they presented false evidence, concealed the fact that an employee of their firm was related to a workmen's compensation referee, and filed malicious claims against Messa. As with Messa's claims under the same provision against Frankford and Allstate, Messa cites no facts that would suggest the existence of race or class-based animus. Thus, these claims will be dismissed.

## V. STEINER, SEGAL AND MULLER

Plaintiff also names as defendants Steiner, Segal and Muller, the law firm he had formerly hired, and his own former attorney, James Muller. Plaintiff alleges that, in April 1988, while Muller was representing him before the Workmen's Compensation Appeal Board, Muller's partner, Erick Segal, improperly directed a referee to disregard one of Messa's claims; that Muller improperly instructed Messa not to appeal a referee's decision to dismiss an aspect of Messa's claim, and that Muller filed a proposed final determination order in December 1990 without Messa's consent. Messa also alleges that

**4.** This element of Messa's complaint also suffers from other weaknesses, including a failure to allege specific facts that would suggest the existence of a conspiracy, and the likely applicability of *res judicata* to much of his claim.

**5.** Messa does allege that Potako concealed the fact that an employee of his firm was a relative of a referee in a workmen's compensation proceeding. At most, this amounts to an allegation of conflict of interest; Messa does not allege that Potako misused this relationship to influence the outcome of the proceeding.

Muller declined to represent Messa in Frankford's April 1994 suit against him, and seems to have declined to continue any legal representation of him at all. Based on these events, Messa makes claims under § 1983 and under § 1985(2); claims of discrimination based on Title VII and the Americans with Disabilities Act (ADA); and claims of fraud which the court will construe as state-law claims.

All of these claims suffer from flaws similar to those of Messa's claims against the other defendants. As to Messa's § 1983 claims, just as Messa fails to allege that Post & Schell and its employees acted under color of law, he makes no such allegation as to Muller or Muller's firm. As to his § 1985(2) claims, Messa fails to allege facts indicating the existence of race- or class-based animus.[6] Messa cannot maintain a Title VII or ADA claim against Muller, as Muller is not his employer, and as Muller's law firm is not a place of public accommodation within the meaning of the term in the ADA.

Finally, the court cannot exercise jurisdiction over Messa's state-law claims against Steiner, Segal and Muller or against Muller personally. The court cannot exercise diversity jurisdiction over this action, because, although Messa alleges that he is a citizen of Pennsylvania, he does not allege the state citizenship of the partners of Steiner, Segal and Muller. Moreover, Messa has not stated any federal claims that would permit this court to exercise supplemental jurisdiction over his state-law claims under 28 U.S.C. § 1367.

## VI. CONCLUSION

For the above reasons, plaintiff's motion to proceed *in forma pauperis* will be granted, but his complaint will be dismissed under § 1915(d).

---

6. Messa does allege that Muller told him, after Muller's representation of him was concluded, that he should have taken a $100,000 settlement and started a business in Latin America. Al-though this statement suggests that Muller was aware of Messa's ethnic origin, it does not suggest that Muller was hostile to him based on that origin.