**Rusbeiro MESSA**

v.

**Frederick RUBIN, esq., Perloff, Rubin & Assoc.; Commonwealth of Pennsylvania; City of Philadelphia.**

Civ. A. No. 95–4409.

United States District Court, E.D. Pennsylvania.

Aug. 16, 1995.

---

Rusbeiro Messa, pro se.

## MEMORANDUM

LOUIS H. POLLAK, District Judge.

Plaintiff, Rusbeiro Messa, has filed a *pro se* complaint seeking damages under a number of federal and state-law claims, and has filed a motion to proceed *in forma pauperis*. Messa asserts that his debts substantially exceed his assets, and that his income is very small; because there is no reason not to

believe these claims, his motion to proceed *in forma pauperis* is granted. However, as noted in this court's memorandum dismissing another action by Messa, the statute granting courts the power to allow plaintiffs to proceed *in forma pauperis*, 28 U.S.C. § 1915, permits the court to dismiss actions in which recovery is precluded as a matter of law. *See Messa v. Allstate Insurance Co.*, 897 F.Supp. 876, 878 (E.D.Pa.1995). As in that action, such dismissal appears appropriate here.

Messa alleges that in late 1992 (the precise date is not specified), his son, Alex Messa, then eighteen years old, was a victim of carjacking while driving the elder Messa's car. Alex Messa was forced into the back seat of the car; after the carjacker assaulted several women at gunpoint, an off-duty police officer named Burnett fired upon the car, hitting and injuring Alex Messa. In the ensuing investigation, the police asked the elder Messa for the names of Alex Messa's friends, as possible suspects; when no suspects were identified in this fashion, an Officer Polakow arrested Alex Messa while the latter was in a local hospital. Plaintiff alleges that Alex Messa asked for a doctor to remove a bullet from his right hand, and asked to see his father and a lawyer, but that a detective named Grim ordered that treatment be withheld until he gave a statement. Alex Messa then apparently did give a statement; however, although he spoke continuously for twenty minutes, Grim transcribed only one and a third pages, which Alex Messa then declined to sign as not including all that he had said. Elements of this statement were then allegedly included in a subsequent police report, and criminal charges were brought against Alex Messa.

Rusbeiro Messa then secured the assistance of counsel, in the form of defendant firm Perloff, Rubin & Assoc., for a fee of $4,500. The firm assigned defendant Frederick Rubin, Esq. to conduct the defense. Messa alleges a series of irregularities in the ensuing trial: an order by the judge, Judge Greenspan, to Alex Messa not to discuss his testimony with his attorney; an order by the judge finding testimony by a blood expert, a

ballistics expert, and the alleged co-conspirator unnecessary; and an instruction by the judge to the jury on conspiracy that said: "... in this case, I think it is clear that the defendant (Alex) and ... there was an agreement to engage in conduct which would constitute crimes of robbery and aggravated assault." Complaint, ¶ 11. (The ellipses, which complicate the task of determining whether the charge is flawed, appear in the complaint.)

Messa alleges that Rubin failed to object to the two flawed orders or to the judge's instruction on conspiracy. The jury found Alex Messa guilty shortly thereafter. Alex Messa was released on bail, apparently pending sentencing, and, according to plaintiff, then became "a fugitive with order of arrest."

Based on these facts, Messa makes a variety of claims under 42 U.S.C. §§ 1983, 1985, and 1986 and under state law against three groups of defendants: the Commonwealth of Pennsylvania, Judge Jane Cutler Greenspan, and Deputy District Attorney Fern Kletter, Esq.; the City of Philadelphia and police officers Polakow, Burnett, Grim, and Judge; and Perloff, Rubin & Associates and its attorneys Neil Perloff, Frederick Rubin, and David Boyer. Messa's claims raise a number of legal questions, only a few of which will be discussed here; for instance, the court will not reach the question of whether plaintiff has standing to assert claims of violations of his son's rights.

■■■ Messa's claims under § 1983 are that the various defendants infringed Alex Messa's rights of due process and equal protection, and thereby infringed his own parental rights. Messa may not maintain any § 1983 claims against the Commonwealth of Pennsylvania, as states are not "persons" for

purposes of 42 U.S.C. § 1983. *See Will v. Michigan Dept. of State Police*, 491 U.S. 58, 71, 109 S.Ct. 2304, 2312, 105 L.Ed.2d 45 (1989). Moreover, to the extent that Messa's claims are challenges to the fact of Alex Messa's conviction, he may not bring them under § 1983. The instrument for bringing such a challenge is either a direct appeal (assuming that the time during which an appeal would be possible has not yet elapsed), a state post-conviction relief petition, or a petition in federal court for habeas corpus. *See Preiser v. Rodriguez*, 411 U.S. 475, 93 S.Ct. 1827, 36 L.Ed.2d 439 (1973).

■■■ Moreover, under the so-called "fugitive from justice" rule, the courts strongly disfavor § 1983 claims brought by fugitives from justice, particularly when they are based on facts intimately associated with the convictions that the plaintiffs are fleeing. *See Ali v. Sims*, 788 F.2d 954, 958–59 (3d Cir.1986) (court of appeals (1) sets aside flawed verdict against defendant prison officials found by jury to have infringed inmate-plaintiff's due process rights in imposing prison discipline, but (2) instead of remanding for new trial, directs district court to dismiss plaintiff's claims with prejudice because plaintiff escaped from custody after first trial). In the case that is usually cited as the basis for this rule, *Molinaro v. New Jersey*, 396 U.S. 365, 365–66, 90 S.Ct. 498, 498–99, 24 L.Ed.2d 586 (1970), the Supreme Court dismissed a criminal appeal after the defendant's escape, finding that, although the appellant's fugitive status "does not strip the case of its character as an adjudicable case or controversy, we believe it disentitles the defendant to call upon the resources of the Court for determination of his claims." *See id.* at 365–66, 90 S.Ct. at 498–99.[1]

1. The Supreme Court addressed some of the foundations of this rule in *Eisler v. United States*, 338 U.S. 189, 69 S.Ct. 1453, 93 L.Ed. 1897 (1949), a case in the 1948 Term in which the Court had granted certiorari to review the affirmance by the Court of Appeals for the District of Columbia Circuit of a conviction for contempt of Congress. Eisler's certiorari petition challenged the constitutionality of the broad investigative mandate of the House Committee on Un–American Activities, the congressional committee whose questions Eisler had declined to answer unless permitted to make an initial statement.

On May 6, 1949—not quite six weeks after the Court heard argument, but before decision—Eisler fled the country. Efforts to obtain Eisler's extradition proving unsuccessful, the government moved that the writ of certiorari be dismissed, contending that Eisler's flight had deprived the Court of jurisdiction over Eisler's case. On June 27, 1949, the last day of the 1948 Term, the Court, in a brief *per curiam* opinion, directed not that the writ be dismissed, but that "after this term, the cause will be left off the docket until a direction to the contrary shall issue." *Id.* at 190, 69 S.Ct. at 1454. The *per curiam*, reflecting the

The "fugitive from justice" rule is ordinarily described as necessary to ensure respect for the court's procedures, see Ali, 788 F.2d at 959, to avoid expending scarce judicial resources on those who have declined to observe the rules established by the courts, see id., and to deter persons from becoming fugitives, see Griffin v. City of New York Correctional Commissioner, 882 F.Supp. 295, 297 (E.D.N.Y.1995). Although this rule is ordinarily applied to cases brought by the fugitive himself or herself, the reasons underlying the rule appear to apply with equal force to actions brought by third parties seeking to assert the rights of a fugitive indirectly.

As to Messa's § 1985 claims, Messa does not state a claim under 42 U.S.C. § 1985(2) or § 1985(3). Such claims require an allegation of conspiracy, which Messa does not make. They also require either (a) an allegation of certain specific forms of interference with the judicial process, or (b) a more general allegation of interference in combination with an allegation of invidiously discriminatory racial or class-based animus, see Messa v. Allstate, supra, at pp. 881–82, allegations that are absent from Messa's complaint. Because Messa's § 1985 claims must fail, so must his claims under 42 U.S.C.

views of a five-Justice (Justices Black, Reed, Douglas, Rutledge, and Burton) majority, concluded that marking the case off the calendar for the time being, rather than indefinitely dismissing the writ, was the practice called for by Smith v. United States, 94 U.S. (4 Otto) 97, 24 L.Ed. 32 (1876) and Bonahan v. Nebraska, 125 U.S. 692, 8 S.Ct. 1390, 31 L.Ed. 854 (1887). Four Justices dissented, but on widely discrepant grounds: Justice Frankfurter, joined by Chief Justice Vinson, felt that dismissal was required by the jurisdictional principles that bar the Court from rendering advisory opinions—"[T]he abstract questions brought before the Court by Eisler are no longer attached to any litigants." Id. at 19. Justices Murphy and Jackson, in separate dissents, concluded that the Court retained jurisdiction and that the questions that had prompted at least four members of the Court to grant certiorari should be answered. Suiting his action to his words, Justice Jackson announced that he would "affirm the judgment below and leave the responsibility for the behavior of the committee squarely on the shoulders of Congress." Id., 338 U.S. at 196, 69 S.Ct. at 1456.

On November 21, 1949, the court entered a per curiam order announcing that "the motion to dismiss is granted and the writ of certiorari is dismissed." 338 U.S. 189, 69 S.Ct. 1453, 93 L.Ed. 1897 (1949).

A 1950 Note on Eisler argues that the Court's interim June 27, 1949 directive to remove the case from the docket pending further judicial direction rested on a misconstruction of what actually happened in Smith v. United States. According to the Note-writer, although the Supreme Court Reporter characterized the Court's action in Smith as an "order that the plaintiff submit himself to the jurisdiction of the court below before the 1st of the next Term or cause be left off the docket at that time," the Minutes of the Court for November 27, 1876 show the entry by Chief Justice Waite of an order providing, "unless the plaintiff-in-error shall submit himself to the jurisdiction (erasure and correction on this word) of the Court below on or before the 1st day of the next Term of the Court, that the cause will again be dismissed"; further, the Note-writer

states that the case was in fact marked "Dismissed" in a docket entry of October 9, 1877, albeit the docket entry was accompanied by what the Note-writer takes to be superfluous verbiage about striking the case from the docket—verbiage which the Note-writer takes to be the source of the Reporter's "incorrect ideas as to the nature of the order. Clearly the practice of the Supreme Court is to dismiss the writ." Disposition of Writ of Certiorari when Petitioner Flees Jurisdiction, 18 Geo.Wash.L.Rev. 427, 431 (1950).

In Molinaro—which arose not on certiorari but on appeal—the Court in a per curiam opinion immediately dismissed the case when advised that appellant had become a fugitive from justice. In addition to citing Smith and other of its prior cases, including Bonahan and Eisler, the Court cited the aforementioned Note. Thus, without expressly endorsing the Note's reading of Smith, the Court appears to have adopted it implicitly. Further, the Molinaro Court's observation that, although appellant's escape "does not strip the case of its character as an adjudicable case or controversy, we believe it disentitles the defendant to call upon the resources of the Court for determination of his claims," can be read as a response to Justice Frankfurter's argument in his Eisler dissent that Eisler's flight deprived the Court of jurisdiction. See Molinaro, 396 U.S. at 366, 90 S.Ct. at 499.

It is also noteworthy that Molinaro, Eisler, Smith and Bonahan were all criminal cases, while Ali v. Sims and the present controversy are civil cases. The rationale of disentitlement set forth in Molinaro appears to apply as persuasively to the facts in Ali and in this case, however. For an instance of a somewhat analogous civil case, which the Court cited in Molinaro, 396 U.S. at 365, 90 S.Ct. at 498, see National Union v. Arnold, 348 U.S. 37, 75 S.Ct. 92, 99 L.Ed. 46 (1954) (finding that it was not a violation of due process for a state court to require that an appellant deliver certain bonds to the court receiver, for possible future use in paying a potential judgment against appellant, and for the state supreme court to dismiss appellant's appeal when the bonds were not delivered).

§ 1986, which grants a cause of action against persons who know of an impending § 1985 violation and fail to prevent it.[2]

 Finally, Messa asserts state-law claims of breach of contract and of malpractice against Rubin and against his law firm, Perloff, Rubin & Associates. Messa alleges that he is a citizen of Pennsylvania. However, he does not allege the state citizenship of defendant Rubin, and, while he alleges that defendant Perloff, Rubin & Associates is licensed by the state of Pennsylvania and has places of business in Pennsylvania and New Jersey, he does not allege the state citizenships of the firm's partners, all of whose citizenships must be taken into account in determining whether diversity of citizenship exists. *See Carden v. Arkoma Associates,* 494 U.S. 185, 196–97, 110 S.Ct. 1015, 1021–23, 108 L.Ed.2d 157 (1990). (Alternately, if Perloff, Rubin & Associates is a professional corporation, plaintiff does not allege its place of incorporation and principal place of business.) Thus, the court cannot determine whether there is diversity of citizenship sufficient to provide the federal courts with jurisdiction under 28 U.S.C. § 1332. Thus, this claim must be dismissed.

*ORDER*

For the reasons set forth in the memorandum filed herewith, it is ordered that leave to proceed forma pauperis is GRANTED, but that the complaint is DISMISSED under 28 U.S.C. § 1915(d).

---

**2.** Messa's § 1985 and § 1986 claims may well also be barred by the "fugitive from justice" rule. It seems, however, to be the better course not to rest dismissal of the § 1985 and § 1986 claims on that basis, given that (a) the rule has not to this court's knowledge previously been applied to claims under those statutes, and (b) the claims have other legal deficiencies.